**UNITED STATES GYPSUM COMPANY,
Plaintiff-Appellee,**

v.

**DALE INDUSTRIES INCORPORATED
and Albert Fruman, Defendants-Appellants.**

**No. 17164.**

United States Court of Appeals
Sixth Circuit.

Sept. 27, 1967.

---

20. 29 U.S.C.A. § 151 et seq.

Bernard J. Cantor, Detroit, Mich. (Cullen, Sloman & Cantor, Daniel G. Cullen, Detroit, Mich., on the brief), for appellants.

Patrick H. Hume, Chicago, Ill. (James M. Wetzel, John K. Wise, Chicago, Ill., on the brief; Hume, Groen, Clement & Hume, Chicago, Ill., of counsel), for appellee.

Before PHILLIPS, EDWARDS and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

Plaintiff-appellee, United States Gypsum Company, sued defendants-appellants, Dale Industries Incorporated and Albert Fruman, for infringement of a patent. Defendants-appellants stipulated that they had indeed copied the device in dispute and hence conceded infringement. Defendants' defense was that the patent was invalid.

The substantive issue in this case is whether the Nelsson Patent No. 3,090,-164 (May 21, 1963) (which plaintiff owns) is invalid because it was a development which was obvious to one with ordinary skill in the prior art to which it pertained. The District Judge, who heard the testimony presented by defendants on this score, held that the evidence was insufficient to upset the statutory presumption of validity contained in 35 U.S.C. § 282 (1964) and that invalidity had not been proven.

It is conceded by the defendants that the Nelsson patent possesses the first two essentials of patentability—namely, novelty and utility. As the District Judge heard the evidence (and as we read it), it is also apparent that the accused device constituted a solution to a substantial problem in the building industry.

Prior to 1959 prefabricated panels of gypsum board were employed in home construction by the simple practice of nailing the panels directly to the studding or joists, or by nailing directly to wooden "furring strips" or metal runners, which had previously been nailed to the studding or joists. In either event, noise transmission from the gypsum panels to the rigid frame of the building produced a drum-like effect which made the use of gypsum panels (or "drywall" construction) an unsatisfactory method of building for multiple occupancy buildings.

United States Gypsum was a major supplier of wallboards. Nelsson, a long-

time employee of Gypsum, designed and developed structural systems relating to the use of its products. Aware of the problem described above, Gypsum assigned Nelsson to attempt a solution.

Nelsson's solution, which is the subject of the accused patent, was described by a plaintiff's exhibit thus:

"[T]he invention in said resilient runner constitutes in its essentials an elongate resilient runner having:

"A. A base flange lying in a first plane

"B. A resilient web

(1) Connected at one edge with the base flange, and

(2) Lying in a second plane inclined to the first plane

"C. A support element

(1) Connected at one edge with the resilient web

(2) Lying in a third plane inclined to the second plane, and

(3) Displaced from the base flange, and

"D. An end flange

(1) Connected with one edge of the support element and

(2) Lying in a fourth plane inclined to the third plane generally in the same direction that the third plane is inclined to the second plane."

These features are illustrated by figures No. 2, No. 3, and No. 4 of the Nelsson patent drawings.

FIG. 2      FIG. 3      FIG. 4

The result of Nelsson's invention was described by the District Judge as follows:

"The invention of Nelsson, embodied in the patent in suit (No. 3,090,164), includes wall and ceiling constructions of enhanced sound reduction character-

istics and relates to a novel and unique component thereof called a sound reduction channel. Upon the advent of the Nelsson invention there came into being a drywall system of such improved resistance to sound transmission as to render drywall construc-

tion practically usable for the first time in multiple occupancy buildings. The sound reduction channel that is the subject of the patent in suit thus constituted an important advance in the drywall field."

Defendants-appellants' attack upon the Nelsson patent involves the claim that it was so thoroughly anticipated in prior art that any novelty actually achieved was the result of mere mechanical advance which was unworthy of being termed invention. In short, defendants contend that the novel features of the Nelsson patent were "obvious" to one ordinarily skilled in the art and hence unpatentable under section 103.

Section 103 provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made." 35 U.S.C. § 103 (1964).

Subsequent to the issuance of the accused patent and shortly after the District Court decision, the United States Supreme Court provided a careful discussion of the application of section 103 to the problems of patentability.

"While the ultimate question of patent validity is one of law, A. & P. Tea Co. v. Supermarket Corp., supra, 340 U.S. at 155, 71 S.Ct. at 131, [95 L.Ed. 162,] the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. * * *" Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966).

With these considerations in mind, we turn to a comparison of the novel features of the Nelsson patent with the state of the prior art. At the outset of this task we think it appropriate to note that the Nelsson patent does not in our view serve to monopolize all resilient mountings. The sound reduction properties of resilient mountings had long been known. Resilient mountings used primarily for lath panels or plasterboard in "wet wall" construction had previously been patented by Balduf [1] and Manske.[2] Further, at least two patents provided resilient mountings for wallboards in dry wall construction. One of these, the Butler No. 3,038,276 (June 12, 1962) had the alignment of the panels and resistance to cracking of interior walls as its primary objectives, and did not claim any acoustical effects. The other, the Tvorik Patent No. 3,046,620 (July 31, 1962) was designed to deal with the same acoustical problem in dry wall construction that the Nelsson patent deals with. But the Tvorik patent applies to ceiling construction and is quite different in design and use.

The actual resilient feature relied upon by Nelsson consists of a leaf spring construction of a metal furring strip called a "runner." This runner extends across a number of studs or joists as compared

**1.** Balduf Patent No. 1,935,536 (Nov. 14, 1933); Balduf Patent No. 2,039,382 (May 5, 1936).

**2.** Manske Patent No. 2,041,773 (May 26, 1936).

to leaf spring clips (see Balduf No. 2,-101,001 (Nov. 30, 1937)) which must be attached singly to each stud or joist. The runner, as illustrated in the Nelsson patent drawings, has (a) a base flange [#24] against the two-by-four, (b) an inclined "web" [#22] with cutout portions [#27] in it to increase its resiliency, (c) a support element or surface [#23] for receiving the screwheads as shown in figure No. 4, and (d) an end flange [#21] slanted toward the two-by-four but not in contact with it. The latter is designed to give rigidity when pressed against the two-by-four for proper support for screwing the wallboard to the runner. The leaf spring then moves the "stop" away from the two-by-four thus supplying the sound retarding resiliency.

We are impressed that the Nelsson patent presents a novel design. It is built in long metal furring strips, as opposed to clips. It is fabricated from one piece of metal, as compared to several pieces in other designs. Finally, (like no other design in the prior art) it provides a leaf spring with a flange or "stop" which when temporarily compressed for application of wallboard, provides a rigid surface for the screws and subsequently springs out to supply resiliency for sound reduction in its permanent position.

No prior art which is called to our attention teaches these three features either singularly or in combination in the same design and function as does the Nelsson patent. At least in combination, we believe these features supply the "non-obviousness" required by section 103 for patentability.

While a number of the patents relied upon by defendants prove to be related to the Nelsson design, each appears to be readily distinguishable.

Thus, the Balduf Patents No. 1,935,536 and No. 2,039,382 and the Manske Patent No. 2,041,773 are either clip designs which must be applied singly to each stud or joist or multipiece clip-runner designs. These patents generally utilize channels for holding panels. This last feature makes them unusable for dry wall construction since masking the channel fingers would require application of wet plaster.

Balduf Patent No. 2,101,001 is also a clip device; it is not a one piece runner. Although it does provide a system for attachment of wallboard to a perforated plate, this method of attachment is quite different from that provided by the Nelsson device.

The Butler Patent No. 3,038,276 provided resiliently flexible strips for "floating" wallboard construction. Its basic purpose was to align panels properly and to avoid cracking of interior walls. It employed adhesives for application of panels, and it claimed no sound reduction purpose or result.

The patent cited from prior art which comes closest in purpose and function to the Nelsson patent we believe is the Tvorik Patent No. 3,046,620. This device is entitled "ceiling hanger." It is a stirrup type of device, the upper flanges of which can be nailed on each side of the ceiling joist. A wood furring strip is fitted in the bottom of the stirrups of a number of these hangers. The furring strip runs parallel to the joist but is spaced apart from it by the spring action of the sides of the hanger and the weight of the attached panels. When wallboard is attached, nails are driven through both the wallboard panel and the hanger into the furring strip. The hanger is compressed during this operation so that the furring strip is flush against the joist to give rigidity for nailing. After the panel is nailed in place, the hanger springs back holding the furring strip resiliently out of contact with the joist. There appears to be no doubt that the Tvorik patent is a practical method of achieving a sound reducing application of wallboard construction. But the device is basically dissimilar to Nelsson's. It is not a leaf spring device. It is not a one piece resilient runner. And it claims utility primarily for ceiling construction.

With the exception of the Tvorik patent, all of the patents we have mentioned and distinguished were before the Patent

Office. At trial before the District Judge nineteen patents, including the six we have referred to, were the subject of testimony and of consideration by the District Judge. The District Judge's findings and conclusions included the following:

"26. With respect to the patents considered by the Examiner in the Patent Office, nothing was adduced at trial which suggests that the Examiner failed to consider the pertinent art. The Court finds as a fact that the Patent Office did consider the most pertinent art.

"27. With respect to the other of the patents discussed at trial but not noticed in the file history of the patent none is more pertinent to the claimed invention in suit than those references considered by the Examiner in the Patent Office in allowing the claims, and some of the patents were for constructions plainly non-analogous in structure and function to the patent in suit.

"28. As to the other of the patents and the publication which were noticed to the Plaintiff and offered into evidence but not discussed at trial, the Court finds that none is more pertinent to the claimed inventions in suit than those references considered by the Examiner in the Patent Office in allowing the claims."

We agree with the District Judge, except in regard to his evaluation of the Tvorik patent. But as to it, independent consideration of it from the record convinces us for the reasons stated that it did not anticipate the Nelsson device.

■ We believe that the record supports the District Judge's conclusion that the defendants did not produce sufficient evidence to show invalidity or to overbear the presumption of validity to which Nelsson's patent was entitled under 35 U.S.C. § 282 (1964). As we see the matter, Nelsson was the first to develop a one piece metal runner which is a practical device for resilient and sound reducing mounting of "dry wall" panels. This we regard as exceeding "a slight technological advance." See Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 92, 62 S.Ct. 37, 86 L.Ed. 58 (1941). The nature of the prior problem, the success of the device, and indeed, defendants' copying of same, all help to reinforce this view.

A subsidiary issue presented by this appeal arises from the fact that the United States District Judge excluded as a trial exhibit a government publication dated 1956 which appellants claim illustrated a resilient metal runner (panel 316/319) fully anticipating Nelsson's.

The District Judge's ruling on this was:

"At the trial and over the objection of the Plaintiff, Defendants sought to introduce into evidence a patent and a publication noticed to the Plaintiff less than one week before trial. The Court heard arguments from counsel for both parties and inspected the documents, and upon due and deliberate consideration refused entry of the documents into evidence because the Defendants failed to comply with the requirements of Section 282, Title 35 of the United States Code and for the additional reasons that the Defendants failed to present persuasive reasons for the Court to exercise its discretionary powers, and that the documents themselves did not constitute the proof for which they were offered."

Without passing on the discretionary feature of the District Judge's ruling, we have inspected this publication and agree that, if admitted, panel 316/319 would in no way have changed the result of this proceeding, since it offers definitely less analogy to the Nelsson patent than the other patents which we have analyzed.

The judgment of the District Court is affirmed.