Richard M. Rosenbaum, J.
Plaintiff' Gannett Co., Inc., publishes two daily newspapers in the City of Rochester, New York and publishes a number of newspapers in other cities. The plaintiff’s newspapers are sold and circulated in various ways and by various means. One of the ways and means is by newspaper vending machines placed at locations around the city of Rochester. Many of the locations include part of the public sidewalk. A person who wishes to buy a newspaper while walking on the street simply drops 15 cents in coin in a slot attached to the machine, opens a small door and takes a paper. *620 The machines are uniform in size, being 3 feet high 1 foot 3% inches in depth and 1 foot 7 inches in width. On the top of each machine is a coin box 1 foot 1 inch high and 8% inches wide. The defendants are the City of Rochester and former and present members of the Rochester City Council.
On December 28, 1971 the defendant Rochester City Council repealed chapter 74 of the Municipal Code and adopted and enacted a new chapter 74 of the Municipal Code of the City of Rochester entitled “Newsstands”, to be effective in 1972. The old chapter 74 did not include corporations and so did not apply to plaintiff. The new chapter 74 provides, insofar as pertinent, that it shall be unlawful to maintain or use any table, box, stand, newspaper vending machine or other structure for the sale, display or .storage of newspapers, or magazines upon any sidewalk without first obtaining a permit. In order to obtain a permit the applicant must file proof of insurance with personal injury limits of $50,000 to $100,000 and property damage not less than $50,000 and the policy must name the city as an insured. If the applicant can show proof of financial responsibility to act as self-insured this will be accepted by the Public Works Commissioner in lieu of proof of insurance if accompanied by an indemnification agreement approved by the Corporation Counsel. If the Commissioner of Public Works finds that an applicant is unable to provide such insurance and is unable to provide proof of financial responsibility to act as a self-insured, said insurance requirements shall be waived by the Commissioner of Public Works if the City Council concurs. In order to place a structure at any location an application for a permit must be filed 10 days in advance. After 10 days a permit shall be deemed to be granted unless the Commissioner of Public Works within that period denies the application. Any table, box, stand or newspaper vending machine existing and in place upon the effective date of the ordinance may continue in place provided the owner applies within 10 days of the effective date of the ordinance and provided the Commissioner of Public Works does not deny the application. The permit may be revoked upon written notification from the Commissioner of Public Works when he finds the structure no longer complies with the standards in the ordinance. It is provided that the Commissioner of Public Works shall grant a permit if he finds the structure will not interfere with the public’s use of the right of way, that the structure will not block pedestrians’ and motorists’ visibility, and that the structure will not interfere with the free flow of traffic from build *621 ing entrances and exits. The ordinance further provides that the Public Works Commissioner may regulate size, color and appearance of the structure, considering availability, harmony, and safety of pedestrians and motorists. The Commissioner of Public Works is to charge for the permit an amount not to exceed the cost of processing the application with a maximum of $10 for each structure. Violations of the ordinance are punishable by a fine or imprisonment or both or by civil penalty recoverable by the city in a civil action. The ordinance also contains a separability or saving clause.
Plaintiff contends that the new chapter 74 is unconstitutional and invalid under the First Amendment and the Fourteenth Amendment to the Constitution of the "United States and under section 11 of article I, of the Constitution of the State of New York. Plaintiff argues among other things that this ordinance violates the equal protection clause in that it regulates the use of public sidewalks only with respect to display or sale of newspapers and magazines in a certain manner; imposes prior restraints upon the display or sale of newspapers and magazines on the public sidewalk; imposes a tax upon the display or sale of newspapers and magazines on the public sidewalk; creates indefinite subjective standards for granting and revoking permits to display or sell newspapers and magazines; regulates the size, color and appearance of structures used to display or sell newspapers and magazines on the public sidewalk; and imposes criminal sanctions and penalties for violations.
The brief for the amicus curiae joins the plaintiff in its attack and particularly stresses the plaintiff’s argument that by new chapter 74 the city is infringing on constitutionally protected rights including freedom of speech and press.
Defendants generally deny plaintiff’s arguments and contend that newspaper vending machines do not involve freedom of the press or other First Amendment rights and even if they do involve First Amendment rights the ordinance is still valid.
The City of Rochester is empowered by the New York State Legislature to preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and for that purpose to regulate and license occupations and businesses. (General City Law, § 20, subd. 13.) In fact, every municipality has the right and the duty in the reasonable exercise of the police power to control and regulate the use of public streets and sidewalks in order to keep them open and available for movement. (Shuttlesworth v. City of Birmingham, 394 U. S. 147.)
*622 Municipal ordinances are entitled to a presumption of validity and will be sustained unless clearly invalid. (New Orleans Public Serv. v. City of New Orleans, 281 U. S. 682.) However, one must balance this presumption by the preferred place given in our scheme to the freedoms constituting the life blood of a democratic system of government. These freedoms are part and parcel of our way of life. They are so sacred that dubious intrusions upon them cannot be permitted. Any attempt to restrict must be justified by clear public interest clearly and imminently threatened.
The type of structures covered in the ordinance, other than plaintiff’s news vending machines, may in certain instances involve business conduct. Plaintiff’s news vending machines certainly do. Defendants argue that this element of business conduct removes the case from the pure speech and press area thereby limiting the requirement of stringent standards to be applied. It has been held by the United States Supreme Court in a case involving speech mixed with business conduct: “ Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation * * * The idea is not sound therefore that the First Amendment’s safeguards are wholly inapplicable to business or economic activity * * * only if grave and impending public danger requires ” it can an intrusion by a municipality be supported. (Thomas v. Collins, 323 U. S. 516, 530-532.)
It is important in the first instance to examine the actual public necessity underlying the ordinance. The significant question is, how do these vending machines or other equipment mentioned in the ordinance impede and hamper traffic to any substantial degree? (Wolin v. Port of New York Auth., 268 F. Supp. 855.) The defendant argues that the vending machines could constitute a dangerous obstruction to the use of the public sidewalk, but they, according to the proof, have not and do not. The restrictions on First Amendment rights contained ■ in this ordinance are far from incidental and that is what is bad. (United States v. O’Brien, 391 U. S. 367.) The ordinance is guilty of overkill similar to shooting down a fly with a cannon. When one considers the restrictions embodied in new chapter 74 pertaining to newspapers and magazines it becomes apparent that the ordinance might as well restrict publication also, since the unrestricted publication of newspapers and magazines is of little value when coupled with restrictions on circulation. (Lovell v. City of Griffin, 303 U. S. 444.)
*623 The problem here in part is, why this ordinance to begin with? Why suddenly regulate news vending machines to such an extent when the machines are unobtrusive, have never as far as this court knows ever caused any harm of any kind, and provide an important convenience for the public. Obviously if harm was to come to the city in the form of damage from these machines the city would have a cause of action against the plaintiff. Likewise, if harm came to any citizen he would have a cause of action against the plaintiff. This court took testimony from some 11 witnesses in this case and viewed 55 exhibits. The proof showed that there are two lawsuits by citizens against plaintiff arising out of involvements with these vending machines. The amount of litigation has been minuscule considering the fact that the plaintiff has used this type of machine for about 40 years. Although there are 209 machines within the city limits, there was damage to only one sidewalk and this was minor.
It is obvious that the Gannett news vending machines are not the same as a table, box or stand in the strict sense. However, they are easily moved and in a way are functionally safer than a newsboy. They cannot change position by themselves, and they cannot run against one. They are essentially semi-stationary newsboys. They serve the public as well as the paper. How convenient for those who do not subscribe to the paper to be able to buy one from a machine at any time of the day or night at a readily apparent, convenient location! There are undoubtedly numerous occasions when home subscribers buy newspapers from these machines wanting to find out something immediately. Newspapers not only disseminate news but are an official source of legal notices, weather data and other statistical information. To stifle them is to stifle and deprive ourselves of the vital information necessary to our well-being. There is no compelling reason to do so. Some of the witnesses who testified as mentioned before included police officers of the city. They said that they knew of no complaints regarding newspapers and magazines or news vending machines. One officer testified that the news vending machines were not blocking sidewalk traffic but that he had seen two blind person walk into them without sustaining any injury. Concerning tables, stands and boxes, other witnesses said that they had used them occasionally and could not possibly hand out their newspapers without using them and they could not get the requisite insurance nor could they afford the $10 required by the ordinance for the use of this equipment. These witnesses *624 pointed ont that they must move their tables about to various locations since they cannot carry all of their magazines or newspapers and in doing so they would be afraid that they might be charged $10 each time they moved under one obvious interpretation of the ordinance. Furthermore, the witnesses pointed out that the dissemination of their news has to be in immediate response to other news in order to be effective. In other words, time is of the essence. A witness for the plaintiff testified that in a typical week the vending machines sell 14,661 copies of the Democrat and Chronicle and 11,744 copies of the Times Union plus 721 copies of the Democrat and Chronicle on Sunday. Due to theft of the newspaper there is a 28.91% loss overall. The testimony indicated that the newspaper makes roughly 70% of its money from advertising and 30% from the paper itself. It was also pointed out that certain editions of the newspaper, notably the early morning edition and the late edition, cannot be delivered by carrier boys since they are in school and their participation is limited by law. In addition, newsboys between the ages of 12 and 18 cannot deliver the paper before 6:00 a.m. nor after 7:00 p.m. (Education Law, § 3228), and it is very difficult to get boys to sell papers particularly in the afternoons. Many stores which sell the papers are not open before 6:00 a.m. nor after 6:00 p.m. This court must conclude from the proof that it is not economically beneficial for the plaintiff to sell papers through the news vending machines except insofar as it is of importance for any newspaper and particularly a daily newspaper to increase circulation for the benefit of its advertisers and for the benefit of its public image.
The police power is as broad and extensive as the need for safeguarding the public interest. It is limited by the necessities or exigencies of the situation calling for the exertion of the power (Rhyne, Municipal Law, § 26-2.)
New chapter 74 in the opinion of this court is unconstitutional. It creates a prior restraint on First Amendment rights particularly freedom of the press. To make it unlawful to maintain or use any table, box, stand, newspaper vending machine or other structure for the sale, display or storage of newspapers or magazines upon any sidewalk without obtaining a permit constitutes a giant step backward into a time when people were afraid to express themselves and government was for the privileged few. It is difficult to imagine someone wishing to distribute a newspaper or magazine in response to something that has just happened, having tó wait 10 days for permission *625 from the Public Works Commissioner and the City Council in order to do so. What could be more oppressive than the requirement that an applicant must obtain and file proof of insurance, or proof of financial responsibility, and what an opportunity for capricious, arbitrary favoritism when under this ordinance the insurance requirement can be dispensed with by the Commissioner of Public Works and the City Council for any reason whatsoever. (Staub v. City of Baxley, 355 U. S. 313.) If any citizen might be deprived of the news fresh while it still may call for reaction, then this ordinance is wrong.
The Council has by this ordinance rendered criminal conduct that carries not the slightest taint of corruption or impropriety. This it is not privileged to do. In order for an exercise of the police power to be valid there must be some fair, just and reasonable connection between it and the promotion of the health, comfort, safety and welfare of society. A statute may not infringe upon the right of an individual to pursue a lawful calling in a proper manner or • deprive a person of his property by curtailing his power of sale unless this infringement and deprivation are reasonably necessary for the common welfare. (People v. Bunis, 9 N Y 2d 1.) The news and a free exchange of ideas must not be killed or discouraged by fear of criminal sanctions. The threat of sanctions may deter almost as potently as the actual application of sanctions. As was said by the United States Supreme Court in Dombrowski v. Pfister (380 U. S. 479, 487): “ The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure.” (See, also, LeFlore v. Robinson, 434 F. 2d 933.)
This ordinance anticipates far too much. Instead of saying the sidewalk may not be obstructed, it says one must apply for a permit even if there is no obstruction and then the decision will be made as to whether or not to grant one. This is inherently bad. The right to communicate thoughts and discuss questions on the public street may not be denied or even abridged by ordinance and certainly not in advance by requiring a permit upon the theory that its exercise may obstruct traffic. A municipality cannot require those who wish to discuss matters in the public street to present their subject first to the municipal authorities for approval with discretion in them to grant or refuse a permit. (Hague v. Committee for Ind. Organisation, 307 U. S. 496.)
The fact that the ordinance contains a section which grants permission automatically after 10 days unless denied does not *626 remove the ordinance from prior restraint limitations. Nor does the fact that the ordinance provides that any of the equipment mentioned, if in place at the time of the effect of the ordinance, may be left in place, cure the situation, because there is still the requirement of an immediate application within 10 days of the effective date and it is still up to the Commissioner to grant or deny the application. (Carroll v. President and Comrs. of Princess Anne, 393 U. S. 175.)
The draftsmen of the ordinance make efforts to save it by setting certain standards which if met require issuance of the permit. However, the standards are vague, invite equivocal interpretation and dispute and practically vest the Commissioner with uncontrollable discretion in the granting or denial of a permit. This the court cannot tolerate. (United States Gypsum Co. v. Dale Ind., 383 F. 2d 497.) An ordinance which makes the peaceful enjoyment of freedoms guaranteed by the Constitution, including freedom of press, speech or religion conditioned upon the uncontrolled will of an official as by requiring a permit or license, which may be granted or withheld in the discretion of such official is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms. (Staub v. City of Baxley, 355 U. S. 313, supra.)
The constitutional ban upon the vice of vagueness in regulatory statutes finds particular and emphatic application in the case of enactments limiting the communicative freedoms. The United States Supreme Court has stated: “ Certainty is all the more essential when vagueness might induce individuals to forego their rights of speech, press and association for fear of violating an unclear law.” (Scull v. Virginia, 359 U. S. 344, 353; see, also, 1 Antieau, Modern Constitutional Law, § 5:3).
In addition, the ordinance gives the Commissioner of Public Works the power to decide the size, color and appearance of the equipment taking into account availability, safety of pedestrians and motorists and harmony with the location. Here again a public official can run amuck, favoring some while holding others in disfavor (Rhyne, Municipal Law, § 27-8; Staub v. City of Baxley, 355 U. S. 313, supra).
Courts have frequently ruled against licensing systems which vest in an administrative official power to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places. The court in Strother v. Thompson (372 F. 2d 654) seems to indicate that if there is any discretion as to granting permits, if there is. any power to discriminate, if there is any control over speech, the ordinance is unconstitutional.
*627 Although this ordinance contains a saving clause which creates a presumption that it is separable, the entire ordinance must fail if the invalid portion is in fact inseparably connected to the remainder. (National Linen Service Corp. v. City of Norfolk, 196 Va. 277; City of Tucson v. Stewart, 45 Ariz. 36.) There is also a presumption that an ordinance is intended to be enacted as a whole, and that presumption is overcome only when it clearly appears that some portion is separable. (Missouri Public Serv. Corp. v. Fairbanks Morse & Co., 19 F. Supp. 45.)
This court does not mean to infer that any part of the ordinance as it pertains to the plaintiff or any others who might fall within its ambit would be constitutional. However, clearly it would be possible for City Council to pass a regulatory ordinance, provided such ordinance did not infringe on constitutional rights. In fact, it appears that the several sections of the subject ordinance are interdependent in their application to one in plaintiff’s position and constitute but one complete act for the licensing of plaintiff’s activities. That is the obvious reason that the entire ordinance has been attacked. Basically what we have here is the standard balancing situation between the rights of a municipality to control its streets for the convenience of the public and First Amendment rights. The case of Hamer v. Musselwhite (376 F. 2d 479) is an example of the premise that each case must be considered on its own facts. That ease involved an ordinance prohibiting use of certain city streets for parades. The ordinance was declared constitutional but the court indicates that the basis of its decision was because people could still parade on sidewalks and street shoulders. The case of City of Manchester v. Leiby (117 F. 2d 661) is another example. The City of Manchester required newsboys to obtain a badge. All they had to do was apply and pay $.50 and the $.50 was to be returned when the badge was turned in. The court held the ordinance constitutional, pointing out that there was no element of prior censorship upon the distribution of literature involved. No substantial burden was imposed upon freedom of the press.
In the subject ordinance we have legislation which stifles freedom of speech as well as freedom of press. In this day of turmoil and social unrest if a person wished to print a response to news of a governmental position on any subject and distribute it in public, placing numerous copies on a stand, box or table, under this ordinance at least 10 days would have *628 to pass in the obtaining of a permit, thereby effectively eliminating the meaning of the response.
There is further danger in the subject ordinance in requiring prior permission of a public official to do the acts and use the equipment mentioned therein. The danger is to the right of a person or a group not to be denied equal protection of the laws. (Cox v. Louisiana, 379 U. S. 536.) One must examine the classification into which newspapers and magazines have been placed by the ordinance to determine whether or not they have been deprived of equal protection of the laws.
“But the classification must not be arbitrary and must rest upon some ground of difference having a substantial and reasonable relation to the accomplishment of a legitimate public object [citations omitted] and that is true even where the regulation is one dealing with the use of city streets and highways as a place for carrying on private business [citations omitted] ” (Russo v. Morgan, 174 Misc. 1013, 1017).
“ But the fact that a State is dealing with a distinct class and treats the members of that class equally does not end the judicial inquiry. ‘ The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose * * McLaughlin v. Florida, 379 U. S. 184, 191.” (Carrington v. Rash, 380 U. S. 89, 93).
The new chapter 74 does not in the opinion of the court meet these requirements.
This holding does not deprive the city qf the authority to prohibit the use of the public streets for the distribution of purely commercial leaflets. Naturally the city may enact a valid ordinance in compliance with the principles herein announced.
A word should be included regarding the case of 46 South 52nd St. Corp. v. Manlin (398 Pa. 304), cited by defendants. In that case the plaintiff sued to enjoin defendants from operating a newsstand for the sale of newspapers, magazines, pocket books, etc. on the sidewalk of a public street in Philadelphia. The lower court allowed the newsstand to remain but reduced its size. In reversing and ordering the newsstand removed, the Supreme Court of Pennsylvania held that while a free press is essential to the maintenance of liberty and it would be completely beyond the power of the State itself, let alone a municipality thereof to prevent distribution on a public street it does not necessarily follow that a governmental body may not regulate or even prevent the use of stationary newsstands for that purpose. Newsstands are not necessary for the distribution of newspapers, and therefore should not be protected by First *629 Amendment rights. They are privately owned and are operated for private profit. They are a private convenience not a public necessity. The Manlin case is readily distinguishable from the situation we are dealing with here. The plaintiff’s vending machines are not permanent nor are they absolutely stationary. Their location can be changed simply by turning a key in a lock. Furthermore, they are a public convenience and are necessary to dissemination of news at certain times of the day or night. As Justice Mtjsmanno points out in his dissent in the Manlin case, each case must stand on its own. Papers and magazines are ordinarily too bulky to expect newsboys, if you could get them to stand around all day and night, to be able to hold more than a few in their arms, and if they were piled on the sidewalk they could constitute a hazard for pedestrians.
The plaintiff contends that this ordinance imposes a revenue-raising tax. It does not. Part of the proof presented by the city was basically that it would cost the city far more to police this ordinance than it would gain in revenue. The ordinance specifically provides that the cost of the permit is not to exceed the cost of processing the application to a maximum of $10. The municipality may charge a small fee sufficient to defray the expense of licensing if the license has a reasonable, discernible relationship to the police protection or the good order of the community. (Jones v. Opelika, 316 U. S. 584, revd. 319 U. S. 103.) Plaintiff argues that the Councilman who introduced this ordinance had previously introduced a resolution calling for the City Manager to seek out sources of revenue and particularly to pursue plaintiff with a view toward imposing a tax on its newspaper vending machines. The afore-mentioned resolution should have no bearing on the constitutionality of new chapter 74. One of the subtle principles of constitutional law that this court heartily indorses is that an otherwise constitutional statute will not be invalidated on the basis of an alleged illicit legislative motive. (United States v. O'Brien, 391 U. S. 367, supra.) What may motivate one councilman to sponsor an ordinance is not necessarily what motivates others to enact it. (McCray v. United States, 195 U. S. 27.)
The plaintiff pays property tax and income tax and this opinion has no bearing on that duty. The predominant purpose of the grant of immunity here invoked is to preserve an untrammeled press as a vital source of public information. Circulation of information should not be limited. The newspapers, magazines and other journals of the country continue to expose public and business affairs of the Nation to public scrutiny *630 and it cannot be debated that public opinion is the most effective of all inhibitions upon misgovernment. The abridgement of the publicity afforded by a free press cannot be regarded otherwise than with considerable doubt. A free press stands as one of the great interpreters between the government and the people. To shackle it is to shackle ourselves.
This decision constitutes the declaratory judgment with regard to the constitutionality of the ordinance in question.
The plaintiff’s request for a summary judgment is granted.