OPINION OF THE COURT
Aaron D. Bernstein, J.
In this consolidated motion, the above-captioned defendants move pursuant to CPL 170.30 (subd 1, par [a]) for an order dismissing the criminal complaints lodged against them, upon the ground that the statute which they have been charged with violating, is unconstitutional. In each case, either the corporate or individual defendant, has been charged by the Department of Consumer Affairs with violating section B3224.0 of the Administrative Code of the City of New York in that he operated a motion picture theatre without the required license. It is the contention of the defendants that the Administrative Code’s movie licensing provisions as set forth in section B32-24.0 et seq. constitute an unlawful prior restraint upon the First Amendment rights, and in addition that *69 they are vague and overbroad. In response, plaintiff argues that the defendants lack standing to attack the constitutionality of article 2 of chapter 32 of the Administrative Code (hereinafter referred to as the "movie licensing statute”) because they have not applied for, nor been denied an operating license.[1] Furthermore, the plaintiff contends that the movie licensing statute does not infringe upon any constitutional barriers, since it. contains narrow guidelines regulating the issuance, renewal, revocation and suspension of motion picture licenses.
At the outset, this court must determine whether the defendants have standing to attack the movie licensing statute. The traditional test for determining standing is whether there is a sufficient nexus between the status of the defendants and the deprivations allegedly flowing from the existence of the laws being challenged. The defendants herein have adequately alleged and shown that they will sustain a direct and immediate injury as a result of the enforcement of this statute.[2]
In Burton v Municipal Ct. of Los Angeles Judicial Dist. (68 Cal 2d 684), the petitioners, who were charged with violating a criminal statute,[3] were granted standing to attack the constitutionality of the underlying ordinance, notwithstanding the fact that neither of them had applied for a license under the ordinance they were challenging. Accordingly, where a person is being prosecuted criminally or threatened with such prosecution, such person is not required to show that his own conduct could not be regulated by a narrow construction of the statute under attack (Dombrowski v Pfister, 380 US 479, 486). Nor is a defendant who is faced with criminal prosecution, required to demonstrate that the statute’s deterrent effect on legitimate expression is both real and substantial. (Young v American Mini Theatres, 427 US 50; Freedman v Maryland, 380 US 51, 56; Calderon v City of Buffalo, 61 AD2d 323, 326-327.) Clearly then, the defendants have standing to question the constitutionality of the "movie licensing statute”.
Turning to the merits of the case, the defendants ad *70 vanee a two-pronged argument. First, they argue that the movie licensing statute is, "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application” (Cameron v Johnson, 390 US 611, 616, reh den 391 US 971). The test then, is that legislation carrying penal sanctions must be definite enough to give the public a reasonable opportunity to know what activities are prohibited and must provide explicit and objective standards to those who apply them. A review of the movie licensing statute, reveals that it clearly and precisely delineates the regulated activity,[4] the method and procedure for obtaining a license[5] and the specific grounds upon which a license may be denied.[6] Therefore, a citizen who operates within the ambit of this statute should reasonably understand that his contemplated conduct is proscribed. Accordingly, I conclude that the challenged ordinance is not unconstitutionally vague on its face.
The second prong of defendants’ argument is that the statute, even assuming that it is lacking neither clarity nor precision, is void for overbreadth, that is, it offends the constitutional principle that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.” (Zwickler v Koota, 389 US 241, 250; NAACP v Alabama, 377 US 288, 307.) These parties claim on the one side the freedom of expression, guaranteed by the First Amendment, and on the other side the right to employ the sovereign power explicitly reserved to the State by the Tenth Amendment. However in order to avoid the excesses of administrative censorship, any legislation affecting the dissemination of ideas, must be scrutinized closely, in order to determine that the interferences allowed are only those appropriate. Moreover, this court fully recognizes that there is a strong presumption of constitutionality of a legislative enactment. (See People v Pagnotta, 25 NY2d 333, 337; People v Scatena, 404 NYS2d 655, 657; People v Gonzalez, 402 NYS2d 584, 587.) It is with these principles as a guide that this court will consider whether the movie licensing statute is facially overbroad.
Under section B32-26.0 (subd a, par 5) of the Administrative Code the Commissioner of Consumer Affairs may refuse to *71 issue or renew a license of an applicant or may suspend or revoke a license only upon occurrence of any one or more of the following conditions:
"the applicant, licensee, its officers, principals, directors and stockholders owning more than ten per cent of the stock of the corporation have been convicted to [sic]:
"(A) any of the following offenses and there is a direct relationship between the offense and the conduct of a motion picture theatre:
"(i) an offense within article two hundred and [sic] the penal law relating to bribery involving public servants;
"(ii) a felony within article two hundred ten of the penal law relating to perjury;
"(iii) an offense within article two hundred thirty of the penal law relating to prostitution offenses;
"(iv) an offense within article two hundred forty-five of the penal law relating to offenses against public sensibilities;
"(v) an offense within section 260.20 of the penal law relating to unlawfully dealing with a child;
"(B) any other offense which is a felony under the laws of this state or a crime committed in violation of the laws of any other jurisdiction which if committed in this state would be a felony; "(C) any offense which is a misdemeanor involving the premises on or in which the licensed business is to be conducted”.
There is no doubt that New York City has a valid interest in the exercise of its police power to establish narrowly drawn standards in the granting of licenses for operating motion pictures, and that such standards may include consideration of the character of the applicant. (Matter of Small v Moss, 277 NY 501.) Similarly it is also settled that the distribution and showing of motion pictures is protected by the First Amendment. (Joseph Burstyn, Inc. v Wilson, 343 US 495; Interstate Circuit v Dallas, 390 US 676). Therefore the question for consideration here is whether the licensing scheme which the plaintiff is attempting to enforce against the defendants herein constitutes a valid exercise of the police power in an area which clearly infringes on First Amendment freedoms. Accordingly the Court of Appeals has declared that, "in order for an exercise of the police power to be valid, there must be 'some fair, just and reasonable connection’ between it and the promotion of the health, comfort, safety and welfare of soci *72 ety”. (People v Bunis, 9 NY2d 1, 4.) Moreover, facial over-breadth challenges are most compelling where statutes seek to regulate pure speech or to restrict the time, place and manner of expression of communicative conduct. (Broadrick v Oklahoma, 413 US 601, 615; People v Duryea, 76 Misc 2d 948, affd 44 AD2d 663.)
At the heart of the issue regarding the unconstitutionality of the New York City "movie licensing statute”, is the inordinate emphasis on prior criminal convictions governing the issuance, renewal and revocation of licenses under the ordinance. Standards for excluding persons from engaging in commercial activities must bear some reasonable relation to their qualifications to engage in these activities. In the present case I can perceive no reasonable relation between the qualifications of an applicant to operate a movie theatre and any past conviction of any of the vast number of crimes listed in section B32-26.0 (subd a, par 5) of the Administrative Code. To permit the suspension of operation of a movie theatre on the basis of a prior conviction even for obscenity, amounts to an unconstitutional suppression of protected freedom of expression. (Avon 42nd St. Corp. v Myerson, 352 F Supp 994, 998.) It is well established by a series of decisions that ordinances controlling licensing of movie theatres are unconstitutional where officials are vested with authority to grant or deny the license on the basis of a prior criminal conviction. In City of Seattle v Bittner (81 Wn 2d 747) an ordinance which denied a theatre license if the applicant has within 10 years of the date of application been convicted of any felony or any misdemeanor involving moral turpitude or intent to defraud,[7] was struck down as being unconstitutional on its face. Again in City of Delavan v Thomas (31 Ill App 3d 630) a municipal ordinance which provided that a movie license could be revoked if the licensee violates any statute,[8] was voided because of its obvious attempts to penalize those previously convicted of showing obscene films. Finally, in Alexander v City of St. Paul (303 Minn 201, 202-203) the licensing statute for movie theatres provided that " '[i]t shall be grounds for rescinding or the denial of any motion picture theater license granted under this ordinance if the licensee * * * has been convicted of any Federal or State Statute or Municipal Ordinance pertaining to the sale, distribution exhibition of obscene material relative to *73 the operation of the motion picture theater license.’ ”[9] In declaring this ordinance unconstitutional the court stated (supra, p 206) that, "[t]he standard for license revocation * * * denies plaintiff the right to exercise a constitutionally protected right because of a past abuse of that right”. (See, also, Hamar Theatres v City of Newark, 150 NJ Super 14; McKinney v City of Birmingham, 52 Ala App 308, cert den 420 US 950.)
In the court’s view, the defendants’ point that the operators of movie houses have been singled out for the purposes of excessive regulation, is well taken. Participants in the business of distributing and displaying motion pictures require no special expertise. They are not like doctors or lawyers or school teachers whose past criminal convictions are often directly related to their occupational qualifications and may therefore be reasonably invoked to bar them from practicing their professions. The ordinance in this case appears to be primarily concerned with persons who have been convicted of sex crimes. No showing has been made that such persons are in any way disqualified to participate in the operation of a movie theatre or likely to abuse the right to do so to promote any criminal propensities that they may still possess. Accordingly, the ordinance’s broad exclusion for past criminal convictions goes far beyond any constitutionally permitted restriction on the right to engage in a lawful occupation or business.
It is contended however by the plaintiff, that "under the law, a license or employment opportunity cannot be denied an individual on the basis of a previous criminal conviction, unless the conduct of the crime which he was convicted of has a direct bearing on his ability or fitness to perform a responsibility related to the licensure or employment sought.” Clearly however, such a contention cannot stand in the face of the precise language of the statute in question. In this respect it is the finding of this court that the mere conviction of one or more of the enumerated crimes listed in the "movie licensing statute” cannot, as a matter of law, have any bearing on the ability of a license applicant to operate a movie theatre. Furthermore, it is abundantly clear that the movie licensing statute is set up in such a manner, that the conviction of a crime will allow the licensing official to find that, "there is a direct relationship between the offense and the conduct of a *74 motion picture theatre.” (Administrative Code, § B32-26.0, subd a, par 5, cl [A].) Thus, under the statute in question, it is conceivable that an applicant would be denied a license, if he has previously been convicted of selling tobacco to a child less than 18 years old, in the premises he wishes to utilize as a movie theatre.[10] Certainly, in the area of First Amendment freedoms, the existence of a licensing statute which is susceptible of such absurd and irrational applications, is objectionable as overbroad. The dangers inherent in this statute are strikingly illustrated by section B32-26.0 (subd a, par 5, cl [C]) which mandates that a license be denied or revoked in the event that the applicant has been convicted of "any offense which is a misdemeanor involving the premises on or in which the licensed business is to be conducted.” Accordingly a license applicant who has been convicted of maintaining the proposed movie theatre building in violation of a zoning resolution,* [11] would also be denied a license. Even the threat of sanctions may deter the exercise of these freedoms almost as potently as the actual application of sanctions (N. A. A. C. P. v Button, 371 US 415, 433). Moreover, since a denial of a license would prohibit the defendants from engaging in an activity protected by the First Amendment, it could only be justified, if permitting a person who had been convicted of one of the crimes enumerated in the statute, to operate a movie theatre constituted a clear and present danger of a serious, substantive evil. (Thomas v Collins, 323 US 516, 530; Board of Educ. v Barnette, 319 US 624, 639.)
In addition, the court is not convinced that the thrust of the movie licensing statute reaches for a legitimate purpose as defined in section 773-1.0 of the Administrative Code.[12] It could neither serve the interests of public health and safety nor the maintenance of integrity, honesty and fair dealing, if persons convicted of crimes were prevented from operating movie theatres. Furthermore there is no indication in the opposing *75 papers that the defendants’ theatres are either physically unsafe or dens of criminal activity. Nor is the court persuaded that section 752 of the Correction Law[13] remedies any of the constitutional deficiencies of the statute in question. It does not remove the stigmatic inference raised by the enumerated crimes nor negate the possibility of an overbroad sweeping and improper application by the licensing official. Finally in this delicate and vulnerable area of First Amendment rights it places the burden of enforcement on the disenfranchised individual through a proceeding pursuant to CPLR article 78. (Correction Law, § 755, subd 1; see, also, Glucksman v Cuomo, 62 AD2d 978.) Clearly, a statute which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees, contingent upon the uncontrolled will of an official, as by requiring a permit or license which may be granted or withheld in the discretion of such official, is unconstitutional. (Staub v City of Baxley, 355 US 313, 322.) Nor is the statute and its attendant evils rendered less objectionable because the regulation of expression is one of classification rather than direct suppression (Interstate Circuit v Dallas, 390 US 676, 688-689, supra; cf. Bantam Books v Sullivan, 372 US 58).
The court finds to be without merit the reliance of the defendants on the case of Gannett Co. v City of Rochester (69 Misc 2d 619).[14] The ordinance in that case did not require proof of financial responsibility but rather required proof of insurance or in lieu thereof proof of financial responsibility. (Gannett Co. v City of Rochester, supra.) Notwithstanding this misplaced emphasis of the defendants, this court finds that the requirement that the license applicant furnish financial information and records concerning the source of funds used or intended to be used in the operation of the licensed business,[15] to not be permissible and be an unnecessary intrusion. Such a requirement goes far beyond what is reasonable to determine whether the applicant is financially responsible.
Although certain parts of the movie licensing statute are *76 reasonable and proper, this court is not inclined to prune away the unconstitutional portions. It is not the province of this court to draft legislation. Suffice it to say that the unconstitutional portions of the "movie licensing statute,” are so pervasive that they taint the viability of the entire statute. In view of the foregoing, this court holds section B32-26.0 of the Administrative Code of the City of New York is unconstitutional on its face.[16] Consequently, defendants’ motions to dismiss the complaints against them are hereby granted.[17]

. Apparently five of the defendants have made application for a license and such applications are currently pending in the Department of Consumer Affairs.

. Subdivision b of section 773-5.0 of the Administrative Code imposes a fine ranging from $25 to $500 and/or 15 days imprisonment, together with a civil penalty of $100 on any person who engages in a regulated activity without a license.

. Petitioners were charged with violating section 103.109 of the Los Angeles Municipal Code, a misdemeanor.

. See section B32-22.0.

. See section B32-25.0.

. See section B32-26.0.

. Seattle Ordinance, § 10.02.100(6).

. City of Delavan Ordinance No. 73-6, § 12.

. City Code of St. Paul, § 372.04(g).

. A conviction of this crime (i.e., Penal Law, § 260.20, subd 5) is an offense relating to unlawfully dealing with a child, and as such constitutes grounds for denial or revocation of a license.

. Violation of zoning resolutions is a misdemeanor under section 643a-12.0 of the Administrative Code.

. Section 773-1.0 states that, "for the protection and relief of the public from deceptive, unfair and unconscionable practices, for the maintenance of standards of integrity, honesty and fair dealing among persons and organizations engaging in licensed activities, for the protection of the health and safety of the people of New York City and for other purposes requisite to promoting the general welfare”.

. Section 752 provides that "No application for any license or employment, to which the provisions of this article are applicable, shall be denied by reason of the applicant’s having been previously convicted of one or more criminal offenses * * * unless: (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought.”

. See defendants memorandum in support of motion to dismiss, p 10.

. See section B32-26.0, subd a, par 1, cl [D],

. Section 773-16.0 of the Administrative Code provides that, "[i]f any provisions of this title or the application of such provisions to any person or circumstance shall be held unconstitutional or invalid, the constitutionality or validity of the remainder of this chapter and the applicability of such provision to other persons or circumstances shall not be affected thereby.

. After writing the decision in this case and prior to its publication in court the case of Natco Theatres v Ratner (US Dist Ct, SDNY) was decided by Judge Gerard L. Goettel. Both courts have reached the same conclusion independent of each other.