John L. Kirkpatrick, Esq. Village Attorney, Fort Plain
A newspaper publisher has placed several newspaper vending machines on sidewalks adjacent to businesses in your village. You inquire as to the village's authority to regulate the number of these machines and their placement on village sidewalks.
Newspaper vending machines are a constitutionally protected means of distribution under the First Amendment guarantee of freedom of the press, made applicable to the states by the Fourteenth Amendment(Philadelphia Newspapers, Inc. v Borough Council, Mayor, Manager andDirector of Public Works of the Borough of Swarthmore, 381 F. Supp. 228
[ED Pa, 1974]; Southern New Jersey Newspapers, Inc. v State of New JerseyDepartment of Transportation, 542 F. Supp. 173 [DNJ, 1982]). Article I, § 8 of the New York State Constitution also shields these machines from unconstitutional intrusions upon the press (Gannett SatelliteInformation Network, Inc. v Metropolitan Transportation Authority, No. 83-5777 [SDNY, 1984]).
Given the protected status of these machines, local governments may not ban them from public sidewalks (Remer v City of El Cajon, 52 Cal.App.3d 441
[4th Dist, 1975]). Localities are not powerless to control their proliferation, however, for the police powers granted to local governments by the Legislature empower localities to provide for safe, uncongested, and visually aesthetic streets and sidewalks (Municipal Home Rule Law, § 10[1][ii][a][11], [12]). To resolve this tension between the rights of publishers and those of municipalities, the courts in newspaper vending machine cases have employed a balancing test: the municipality's police power interest in maintaining safe and attractive sidewalks is balanced against the publisher's right to distribute its papers and the public's right to receive the information the newspapers contain (Philadelphia Newspapers, Inc. v Borough Council, Mayor, Manager andDirector of Public Works of the Borough of Swarthmore, supra, p 242;Gannett Co., Inc. v City of Rochester, 69 Misc.2d 619 [Sup Ct, Monroe Co, 1972]). A constitutionally acceptable newspaper vending machine ordinance accomodates these conflicting interests through the use of reasonable, narrowly drawn, and content-neutral "time, place and manner" regulations that abate the harms associated with uncontrolled placement of newspaper vending machines while imposing the fewest possible restrictions on protected speech (Philadelphia Newspapers, Inc. v BoroughCouncil, Mayor, Manager and Director of Public Works of the Borough ofSwarthmore, supra, p 242; Westchester Rockland Newspapers, Inc. v Villageof Briarcliff Manor, No. 79-1095 [SDNY, August 10, 1979]; GannettSatellite Information Network, Inc. v Metropolitan TransportationAuthority, supra).
The reasonableness of any time, place and manner regulations will necessarily depend on the specific problems the machines pose. This is a factual question beyond the scope of this opinion; therefore, we are limited to suggesting general guidelines as to what the courts have held to be constitutionally valid and invalid regulations.
As noted above, regulations explicitly banning newspaper vending machines from public sidewalks are constitutionally over-broad and thus invalid (Remer v City of El Cajon, supra; California Newspapers PublishersAssoc., Inc. v City of Burbank, 51 Cal.App.3d 50 [2d Dist, 1975]). Regulations not specifically targeted at vending machines may also be constitutionally defective if they have the effect of foreclosing the machines' access to public sidewalks (Philadelphia Newspapers, Inc. vBorough Council, Mayor, Manager and Director of Public Works of theBorough of Swarthmore, supra). Thus an ordinance making it unlawful to obstruct the free public use of the streets or to make any commercial use thereof, except for loading and unloading operations, was invalidated because it effectively barred a publisher from placing its vending machines on public sidewalks (ibid.). Even as modified to allow businesses that customarily sold newspapers to place the machines on a narrow strip of sidewalk adjacent to the business, the ordinance was invalid; such a condition unreasonably burdened the publisher's right to distribute its papers by making it dependent upon the proprietorship of a nearby business (ibid.). An ordinance may also be subject to attack if it requires the operator of a vending machine to obtain a license or permit, but sets forth no standards to guide the licensing official as to when a license shall be granted or withheld, or if it is strictly a revenue raising measure (Gannett Satellite Information Network, Inc. vMetropolitan Transportation Authority, supra; Gannett Co., Inc. v City ofRochester, supra).
To promote the public welfare, local governments may control the number, size, construction, placement and appearance of newspaper vending machines (Remer v City of El Cajon, supra, p 444). Thus, if the municipality fears that pedestrians will have difficulty maneuvering on sidewalks cluttered with vending machines, it may draft narrow regulations restricting the machines' size and location (PhiladelphiaNewspapers, Inc. v Borough Council, Mayor, Manager and Director of PublicWorks of the Borough of Swarthmore, supra, p 244). If illegal parking by motorists stopping to buy papers is feared, narrow regulations controlling the machines' location with respect to the character of the roadway are acceptable (ibid.). An ordinance directed at these legitimate concerns prohibited the placement of a newsrack where it "unreasonably interferes with or impedes the flow of pedestrian or vehicular traffic"; as so worded, it was held to be sufficiently clear to withstand a constitutional challenge (Kash Enterprises, Inc. v City of Los Angeles,19 Cal.3d 294 [1977]). A municipality may also adopt narrow regulations to avert damage to public property caused by chaining vending machines to municipal fixtures (Philadelphia Newspapers, Inc. v Borough Council,Mayor, Manager and Director of Public Works of the Borough ofSwarthmore, supra, p 244). Street cleaning operations may be facilitated by a regulation precluding vending machines from being installed where they interfere with mechanical street cleaning machinery (KashEnterprises, Inc. v City of Los Angeles, supra). In addition, a municipality may regulate the location of the machines in order to enhance its urban environment (ibid.). Thus, an ordinance that barred newsracks from within three feet of any area improved with flowers, trees or shrubs was held to be constitutionally acceptable (ibid.).
The cases indicate that a newspaper vending machine ordinance must also conform to certain evidentiary and procedural due process standards. For example, an ordinance which empowered a city's corporation counsel to make the initial determination whether a violation had occurred, but did not allow the newspaper distributor to examine any evidence or witnesses upon which the counsel relied, was held to be procedurally inadequate (Westchester Rockland Newspapers, Inc. v City of Yonkers, No. 79-1168 [SDNY, August 10, 1979]). Similarly, if an ordinance authorizes a machine's removal, procedural due process requires that the owner be afforded a hearing on the merits of the seizure either before or after the taking (Kash Enterprises Inc. v City of Los Angeles, supra).
The decided cases thus provide some guildelines for municipalities seeking to draft appropriate newspaper vending machine regulations. In the absence of such regulations, a municipality may seize machines presenting a threat of clear and imminent harm to persons or property (Westchester Rockland Newspapers, Inc. v Village of Briarcliff Manor,supra; Miller Newspapers, Inc. v City of Keene, 546 F. Supp. 831 (DNH, 1982]; Village of Suffren v Westchester Rockland Newspapers, Inc.,82 A.D.2d 880 [2d Dept, 1981).
We conclude that a local government may regulate the presence of newspaper vending machines on public sidewalks through the use of reasonable, narrowly drafted and content-neutral time, place and manner regulations that impinge as narrowly as possible on protected speech. Absent such regulations, a local government possesses inherent police power to remove the machines if they threaten clear and imminent harm to persons or property.