[L.A. No. 30688. Apr. 15, 1977.]

KASH ENTERPRISES, INC., Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

## Counsel

Karl Manheim and Joel F. Franklin for Plaintiff and Appellant.

Burt Pines, City Attorney, Ward G. McConnell and Sherman W. Smith, Jr., Deputy City Attorneys, for Defendants and Respondents.

## Opinion

**TOBRINER, Acting C. J.**—In 1972, the City of Los Angeles enacted a municipal ordinance regulating the size, weight, appearance and placement of newsracks installed and maintained on the city's sidewalks.[1] Three years later, after a number of its newsracks had been removed from their sidewalk locations pursuant to the provisions of the ordinance, plaintiff Kash Enterprises, Inc. instituted an action for declaratory and injunctive relief, attacking the ordinance as unconstitutional on its face and contending that the ordinance had been discriminatorily enforced against newsracks containing newspapers which Kash had published and distributed. Kash thereafter moved for a preliminary injunction, relying solely on its constitutional challenge to the ordinance's facial validity,

---

[1]Two years later, in June 1974, the city enacted two additional provisions, purporting to regulate the content of material disseminated through publicly located newsracks. (See Los Angeles Mun. Code, § 42.00, subds. (f) (7), (f) (8) (quoted in fn. 2, *post*).) These two provisions were held invalid in *Carl* v. *City of Los Angeles* (1976) 61 Cal.App.3d 265 [132 Cal.Rptr. 365]. They are not at issue in the instant proceeding.

and reserving the discriminatory enforcement issue for a subsequent trial. After a hearing, the trial court denied the requested preliminary injunction, and plaintiff now appeals from that order.

Plaintiff contends that the challenged ordinance is unconstitutional on its face in two respects. First, plaintiff asserts that a number of the substantive provisions of the ordinance, limiting the placement and appearance of newsracks, are impermissibly vague and overbroad. Second, plaintiff maintains that the principal enforcement mechanism provided by the ordinance—the summary seizure, retention and destruction of offending newsracks without according a newsrack owner any hearing as to the validity of the seizure—violates both procedural due process and First Amendment principles. As we explain, although we have determined that the substantive provisions of the ordinance—as written or as interpreted in this opinion—are sufficiently definite and narrowly drawn to pass constitutional muster, we conclude that the ordinance's seizure provision is unconstitutional on its face. Accordingly, we conclude that the trial court erred in refusing to grant a preliminary injunction as to that portion of the ordinance authorizing such seizure, retention and destruction of newsracks.

1. *The substantive provisions of the challenged ordinance, as interpreted in this opinion, are sufficiently definite and narrowly drawn to constitute reasonable "time, place and manner" regulations of First Amendment activity, and therefore such provisions are not unconstitutional on their face.*

In evaluating the constitutionality of section 42.00, subdivisions (f) (1) to (f) (6) of the Los Angeles Municipal Code,[2] the municipal

---

[2]Section 42.00, subdivision (f), presently provides in full:

"(f) *Streets—News Racks.*

"(1) No person shall install, use or maintain any news rack which projects onto, into or over any part of the roadway of any public street, or which rests, wholly or in part, upon, along or over any portion of a roadway.

"(2) No person shall install, use or maintain any news rack which in whole or in part rests upon in or over any sidewalk or parkway, when such installation, use of [*sic*] maintenance endangers the safety of persons or property, or when such site or location is used for public utility purposes, public transportation purposes or other government use, or when such news rack unreasonably interferes with or impedes the flow of pedestrian or vehicular traffic, the ingress into or egress from any residence, place of business, or any legally parked or stopped vehicle, or the use of poles, posts, traffic signs or signals, hydrants, mailboxes, or other objects permitted at or near said location, or when such news rack interferes with the cleaning of any sidewalk by the use of mechanical sidewalk cleaning machinery.

"(3) Any news rack which in whole or in part rests upon, in or over any sidewalk or

newsrack regulations at issue here, we must begin by recognizing that the right to distribute newspapers and other periodicals on the public streets lies at the heart of our constitutional guarantees of freedom of speech and freedom of the press. As both the United States Supreme Court and this court have emphasized on numerous occasions: "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for the purpose of assembly, communicating thoughts between citizens, and discussing public questions." (*Hague* v. *C.I.O.* (1939) 307 U.S. 496, 515 [83 L.Ed. 1423, 1436, 59 S.Ct. 954].)

---

parkway, shall comply with the following standards:

"(A) No news rack shall exceed five feet in height, thirty inches in width, or two feet in depth.

"(B) News racks shall only be placed near a curb or adjacent to the wall of a building. News racks placed near the curb shall be placed no less than eighteen inches nor more than twenty-four inches from the edge of the curb. News racks placed adjacent to the wall of a building shall be placed parallel to such wall and not more than six inches from the wall. No news rack shall be placed or maintained on a sidewalk or parkway opposite a news stand or another news rack.

"(C) No news rack shall be chained, bolted or otherwise attached to any property not owned by the owner of the news rack or to any permanently fixed object.

"(D) News racks may be chained or otherwise attached to one another; however, no more than three news racks may be joined together in this manner, and a space of no less than eighteen inches shall separate each group of three news racks so attached.

"(E) No news rack, or group of attached news racks allowed under paragraph (D) hereof, shall weigh, in the aggregate, in excess of 125 pounds when empty.

"(F) No news rack shall be placed, installed, used or maintained:

"1) Within three feet of any marked crosswalk.

"2) Within fifteen feet of the curb return of any unmarked crosswalk.

"3) Within three feet of any fire hydrant, fire call box, police call box or other emergency facility.

"4) Within three feet of any driveway.

"5) Within three feet ahead of, and fifteen feet to the rear of any sign marking a designated bus stop.

"6) Within three feet of any bus bench.

"7) At any location whereby the clear space for the passageway of pedestrians is reduced to less than six feet.

"8) Within three feet of any area improved with lawn, flowers, shrubs or trees or within three feet of any display window of any building abutting the sidewalk or parkway or in such manner as to impede or interfere with the reasonable use of such window for display purposes.

"(G) No news rack shall be used for advertising signs or publicity purposes other than that dealing with the display, sale or purchase of the newspaper or news periodical sold therein.

"(H) Each news rack shall be maintained in a clean, neat and attractive condition and in good repair at all times.

"(4) Every person who places or maintains a news rack on the streets of the City of Los Angeles shall have his name, address, telephone number affixed thereto in a place where such information may be easily seen.

"(5) Any news rack, as said term is defined herein, installed, used or maintained in violation of any of the provisions of this subsection (f) of Section 42.00, except subparagraphs (7) and (8), may be summarily removed by any public officer of this City and stored in any convenient place. The public officer making such removal and storage

■ Moreover, our decisions have repeatedly recognized that First Amendment protection extends not only to traditional street corner, soap-box speeches (see, e.g., *Terminiello v. Chicago* (1949) 337 U.S. 1 [93 L.Ed. 1131, 69 S.Ct. 894]), but to virtually all modes of communication that may be utilized to disseminate ideas and protected expression on the public streets. Thus, past cases have found that demonstrations and parades (*Dillon v. Municipal Court* (1971) 4 Cal.3d 860 [94 Cal.Rptr. 777, 484 P.2d 945]), picketing (*Police Department of Chicago v. Mosley* (1972) 408 U.S. 92 [33 L.Ed.2d 212, 92 S.Ct. 2286]), leafletting (*Schneider v. State* (1939) 308 U.S. 147 [84 L.Ed. 155, 60 S.Ct. 146]), sound truck broadcasts (*Wollam v. City of Palm Springs* (1963) 59 Cal.2d 276 [29 Cal.Rptr. 1, 379 P.2d 481]) and even the posting of signs on public utility poles (*Dulaney v. Municipal Court* (1974) 11 Cal.3d 77 [112 Cal.Rptr.

---

shall thereupon give notice of such fact to the Board of Public Works Commissioners, and immediately surrender possession of the news rack to the representative designated by the Board of Public Works Commissioners. Immediately upon the receipt of such representative of any news rack so removed, the news rack shall be placed in storage in a place designated by order of said Board and the Board shall thereupon take reasonable steps to notify the owner of the news rack of the fact of its removal, the place of its storage, and of the fact that unless the rack is claimed within 45 days, and the cost of the pickup as fixed by the Board paid, that the rack will be deemed abandoned and will be destroyed. Upon failure of the owner to claim such news rack and pay such costs as fixed by the Board within 45 days after such notice has been sent to the owner, such news rack shall be deemed to have been abandoned by the owner, and to be abandoned property, and the news rack and its contents, except money, shall be destroyed by representatives of the Board of Public Works Commissioners pursuant to the provisions of this subparagraph. Any money contained in any news rack so destroyed shall be held in the official custody of the Board of Public Works Commissioners for a period of three (3) years and handled pursuant to Article 3, Chapter 1, Part 1, Division 1 of Title 3 of the Government Code of California. The provisions of this subsection shall govern the removal, storage, abandonment and disposition of news racks maintained on public sidewalks in violation of this subsection, and their contents, the provisions of Section 52.55 of this Code notwithstanding.

"(6) In the case of violations of this subsection relative to restrictions upon attachments of news racks to property other than that owned by the owner of the news rack, to fixed objects or each other, and upon location of news racks, any public body or officer may, as an alternative to removal under Subdivision (5) hereof, remove such attachment and/or move such rack or racks in order to restore them to a legal condition.

"(7) No person shall sell, offer for sale, or keep or maintain for sale any Harmful Matter, as such term is defined in Section 313, Chapter 7.6 Title 9 Part 1 of the Penal Code of California, in any newsrack on any public sidewalk unless such sale is made, or offer of sale is maintained, in the presence of an adult person authorized to prevent the purchase of such matter by a minor.

"(8) No person shall sell, offer for sale, or keep or maintain any newspaper or news periodical in any newsrack on any sidewalk in such manner as to expose to the public view any photograph, cartoon or drawing, contained within such publication, displaying any of the following:

"1. The genitals, pubic hair, buttocks, natal cleft, perineum, anal region or pubic hair region of any person other than a child under the age of puberty;

"2. Any portion of the breast, at or below the areola thereof, of any female person, other than a child under the age of puberty."

777, 520 P.2d 1]) fall "within the protective umbrella of the First Amendment." (*Id.,* at p. 84.)

■ Applying the general constitutional principles underlying the above line of authority, numerous courts—both in California and out-of-state—have in recent years uniformly held that First Amendment protections are applicable to the public distribution of newspapers and periodicals through newsracks and that, as a consequence, municipalities lack constitutional authority to foreclose *all* use of such newsracks on their streets and sidewalks. (See *California Newspaper Publishers Assn., Inc.* v. *City of Burbank* (1975) 51 Cal.App.3d 50 [123 Cal.Rptr. 880]; *Remer* v. *City of El Cajon* (1975) 52 Cal.App.3d 441 [125 Cal.Rptr. 116]; *Philadelphia News., Inc.* v. *Borough C., etc., Swarthmore* (E.D.Pa. 1974) 381 F.Supp. 228; *Gannett Co.* v. *City of Rochester* (1972) 69 Misc.2d 619 [330 N.Y.S.2d 648].)[3] The City of Los Angeles does not challenge the broad holdings of these recent decisions, and we agree with their uniform conclusion that the dissemination of protected material on public streets by means of newsracks falls within the constitutional guarantees of freedom of speech and freedom of the press.

Although the distribution of periodicals through newsracks is thus entitled to constitutional protection, this principle does not ordain, of course, that newsracks are totally immune from regulation by local municipalities. As defendant city notes, every one of the recent decisions invalidating a broad "anti-newsrack" ordinance has clearly indicated that localities retain authority to impose reasonable "time, place and manner" regulations on the use of newsracks, so as to protect legitimate state interests while preserving First Amendment rights. In *Remer* v. *City of El Cajon, supra,* 52 Cal.App.3d 441, 444, for example, the court, after invalidating an ordinance which barred all newsracks from public streets, stated: "The city might consider controlling the number, size, construction, placement and appearance of the vending devices in order

---

[3]In the *Philadelphia News., Inc.* case, the federal district court, in its findings of fact, pointed out a number of ways in which distribution of periodicals through newsracks provides distinct benefits over other means of distribution. The court found, inter alia, that: (1) "newspapers sold by means of newspaper boxes are available at all hours of the day, including the early morning hours before local stores are open for business; this early morning distribution is particularly important for a morning newspaper . . ."; (2) "newspaper boxes provide outlets or points of distribution in addition to those provided by local stores; this is particularly important in suburban areas, where residences and business districts may be spread out over a considerable distance"; and (3) "[a] newspaper box is economically justifiable to the plaintiff [publisher] if it regularly sells 5 to 10 copies per day. Sales of this magnitude would not support a newsboy or newsstand at a given location." (381 F.Supp. at pp. 237-238. See also *Gannett Co.* v. *City of Rochester, supra,* 330 N.Y.S.2d at pp. 654-655.)

to achieve its goals without unduly restricting the free dispersal of information." (See also *California Newspaper Publishers Assn., Inc.* v. *City of Burbank, supra,* 51 Cal.App.3d 50, 53-54; *Philadelphia News., Inc.* v. *Borough C., etc., Swarthmore, supra,* 381 F.Supp. 228, 244; *Gannett Co.* v. *City of Rochester, supra,* 330 N.Y.S.2d 648, 657.) The City of Los Angeles maintains that the ordinance challenged in the present case embodies just such a reasonable "time, place and manner" regulation of newsracks and thus is constitutional on its face.

Plaintiff, while conceding that defendant city may impose reasonable time, place, and manner regulations on newsracks, maintains that a number of the regulatory provisions of the challenged ordinance are, in effect, constitutionally "unreasonable." ■ As plaintiff suggests, time, place and manner regulations of First Amendment activity are constitutionally reasonable only if they are clearly and narrowly drawn to avoid arbitrary and unnecessary curtailment of freedom of speech and freedom of the press. (See, e.g., *Grayned* v. *City of Rockford* (1972) 408 U.S. 104 [33 L.Ed.2d 222, 92 S.Ct. 2294]; *Wollam* v. *City of Palm Springs, supra,* 59 Cal.2d 276, 284-285.)[4] Plaintiff suggests that several portions of the Los Angeles ordinance do not satisfy this rigorous constitutional standard and are either unjustifiably vague or impermissibly overbroad. As we explain, however, with but one minor exception which may be cured by appropriate interpretation, we conclude that the challenged regulations are sufficiently definite and narrowly tailored to survive plaintiff's constitutional challenge.

■ Plaintiff initially attacks the segment of the ordinance which prohibits the placement of a newsrack in a location that "unreasonably interferes with or impedes the flow of pedestrian or vehicular traffic" (§ 42.00, subd. (f) (2)), asserting that the use of the term "unreasonably" renders the clause unduly vague and susceptible to arbitrary application. In *Cameron* v. *Johnson* (1968) 390 U.S. 611, 615-616 [20 L.Ed.2d 182, 186-188, 88 S.Ct. 1335], however, the United States Supreme Court rejected an almost identical vagueness attack on a Mississippi statute which prohibited" 'picketing . . . in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any . . . county . . . courthouse.' " Justice Brennan, writing for the *Cameron* court,

---

[4]As the United States Supreme Court stated in *Grayned*: "Our cases make clear that in assessing the reasonableness of a regulation, we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the State's legitimate interest. Access to the 'streets, sidewalks, parks and other similar public places . . . for the purpose of exercising [First Amendment rights] cannot constitutionally be denied broadly . . . .' [Citation.]" (Fns. omitted.) (408 U.S. at p. 117 [33 L.Ed.2d at pp. 232-233].)

observed: "Appellants . . . argue that the statute forbids picketing in terms 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. . . .' [Citation.] But . . . [t]he terms 'obstruct' and 'unreasonably interfere' plainly require no 'guess-[ing] at [their] meaning.' Appellants focus on the word 'unreasonably.' It is a widely used and well understood word and clearly so when juxtaposed with 'obstruct' and 'interfere.' We conclude that the statute clearly and precisely delineates its reach in words of common understanding." (Fns. omitted.) This reasoning applies equally to the Los Angeles ordinance.

■ Plaintiff secondly challenges the portion of the ordinance which precludes the installation or maintenance of a newsrack "when such news rack interferes with the cleaning of any sidewalk by the use of mechanical sidewalk cleaning machinery." (§ 42.00, subd. (f) (2).) Relying on numerous decisions which have held that First Amendment rights of distribution may not be entirely foreclosed to serve the state's interest in clean streets (see, e.g., Schneider v. State, supra, 308 U.S. 147, 162-163 [84 L.Ed. 155, 165-166]; Van Nuys Pub. Co. v. City of Thousand Oaks (1971) 5 Cal.3d 817, 822 [97 Cal.Rptr. 777, 489 P.2d 809]), plaintiff asserts that the instant provision mandates just such a sacrifice of First Amendment rights upon the altar of "mechanically clean" sidewalks. As we interpret this provision, however, it does not purport to authorize a broad prohibition of newsrack placement on sidewalks but rather simply requires that newsracks be positioned—and perhaps designed—so as to minimize interference with the city's mechanical sidewalk cleaning machinery. So long as such a requirement does not unduly hamper the distribution of newspapers through newsracks, we believe the city is entitled to demand this limited accommodation to facilitate the cleaning of its sidewalks. Of course, if plaintiff demonstrates at trial that the city's use of particular sidewalk cleaning machinery in practice results in a complete or unreasonable limitation on newsracks in a given location, the ordinance's restriction—as so applied—could not be sustained. Judged on its face, however, the challenged provision is not unconstitutional.

Plaintiff thirdly contests the validity of that portion of the ordinance which provides that no newsrack shall be placed "[w]ithin three feet of any area improved with lawn, flowers, shrubs or trees" (§ 42.00, subd. (f)(3)(F)(8)), claiming that the phrase "improved with" is vague and indefinite. In our view, however, the phrase is quite clear and easily understood, simply prohibiting the placement of racks within three feet of any lawn, flowers, shrubs or trees. Again, in the absence of any

showing that the provision unduly restricts the use of newsracks in the City of Los Angeles, we think that the regulation on its face represents a reasonable accommodation of the city's interest in maintaining greenery in an urban environment and the First Amendment interests served by newsracks. (See, e.g., *Blasecki* v. *City of Durham, North Carolina* (4th Cir. 1972) 456 F.2d 87, 92-93; cf. *Collin* v. *Chicago Park District* (7th Cir. 1972) 460 F.2d 746, 751-752.)

■ Finally, plaintiff objects to a section of the ordinance which mandates that "[e]ach news rack shall be maintained in a clean, neat and attractive condition and in good repair at all times." (§ 42.00, subd. (f) (3)(H).) Acknowledging that past decisions have recognized a municipality's authority to enact reasonable newsrack regulations aimed at preserving the good appearance of the public streets (see, e.g., *Remer* v. *City of El Cajon, supra,* 52 Cal.App.3d 441, 444; *Philadelphia News., Inc.* v. *Borough C., etc. Swarthmore, supra,* 381 F.Supp. 228, 244), plaintiff maintains that the present appearance regulation is unacceptably vague in its entirety.

In our view, however, the only portion of the section in question which is properly subject to such an attack is the requirement that newsracks be maintained in an "attractive condition." Insofar as this requirement may be interpreted to impose an aesthetic standard distinct from the commonly accepted meaning of the terms "clean" and "neat," it exposes a newsrack owner to criminal sanction on the basis of a totally subjective aesthetic judgment, a judgment which will invariably vary with the personal taste of individual police officers, municipal inspectors or the ultimate triers of fact in any criminal proceeding. Because such a reading of the term "attractive" would pose obvious constitutional problems in light of its vagueness and potential for arbitrary application (see *Gannett Co.* v. *City of Rochester, supra,* 330 N.Y.S.2d 648, 657; accord *Coates* v. *City of Cincinnati* (1971) 402 U.S. 611, 614-616 [29 L.Ed.2d 214, 217-219, 91 S.Ct. 1686]), we conclude, in conformance with the general principle that legislation should be construed, if reasonably possible, to preserve its constitutionality (see, e.g., *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 948 [92 Cal.Rptr. 309, 479 P.2d 669]), that the term "attractive" must be interpreted in this context simply as a synonym for "neat" and "clean" and not as an independent aesthetic requirement. As so interpreted we conclude that this provision is not unconstitutional on its face.

Thus, in sum, contrary to plaintiff's contentions we conclude that the challenged ordinance's substantive "time, place and manner" regula-

tions, as construed in this opinion, are adequate to meet constitutional standards. As we explain below, however, the procedural aspects of the challenged ordinance do not fare so well when weighed in the constitutional balance.

2. *In authorizing the seizure, retention and destruction of newsracks without affording the owner of the rack either a pre- or post-taking hearing, the newsrack ordinance violates fundamental procedural due process and First Amendment precepts.*

Under the general provisions of the Los Angeles Municipal Code, a newsrack owner who places a newsrack on a public sidewalk in violation of any of the ordinance's provisions is guilty of a misdemeanor, and may be punished by up to a $500 fine or six months imprisonment. (Los Angeles Mun. Code, § 11.00, subd. (m).) In addition to this traditional criminal sanction, subdivision (5) of the challenged ordinance authorizes a public officer summarily to remove any newsrack which he believes to be in violation of the ordinance's size, weight, appearance or location requirements prior to affording the newsrack owner any notice of the removal. (§ 42.00, subd. (f) (5), set out in fn. 2, *ante.*)[5] ■■■■■ The subdivision further provides that after such summary removal, the board of public works commissioners shall notify the owner of the seizure of the rack and the place of its storage, and shall inform the owner that unless he claims the rack within 45 days and pays the cost of removal as determined by the board, the rack will be deemed abandoned and will be destroyed. (*Id.*)[6]

Thus, although a newsrack owner is ultimately provided notice of the seizure after the removal of his rack, the present ordinance accords him

---

[5]Subdivision (5) specifically authorizes the summary removal of a newsrack for violation of any provision of the ordinance "except subparagraphs (7) and (8)," the provisions purporting to regulate the content of material contained within newsracks. As already noted, subparagraphs (7) and (8) have previously been held invalid. (See fn. 1, *ante.*)

[6]At the time the present action was instituted, subdivision (5) differed in minor respects from the present version. The earlier version did not specifically assign the enforcement task to the board of public works commissioners, and authorized the sale of unclaimed newsracks as well as their destruction. The earlier version, like the present section, however, authorized the removal of newsracks without prior notice to the owner and did not provide for a hearing on the merits of the removal at any time. Under settled principles, the version of the ordinance in force at present is the relevant legislation for purposes of this appeal. "It is . . . an established rule of law that on appeals from judgments granting or denying injunctions, the law to be applied is that which is current at the time of judgment in the appellate court." (*Callie* v. *Board of Supervisors* (1969) 1 Cal.App.3d 13, 18 [81 Cal.Rptr. 440]; see, e.g., *Complete Serv. Bur.* v. *San Diego Med. Soc.* (1954) 43 Cal.2d 201, 207 [272 P.2d 497]; *Cal-Dak Co.* v. *Sav-On Drugs, Inc.* (1953) 40 Cal.2d 492, 496-497 [254 P.2d 497].)

absolutely no opportunity for a hearing on the merits of the seizure, either before or after the removal. No matter how arbitrary or wrongful the removal may have been, under the terms of the ordinance an owner can never recover his rack without paying the administrative cost of removal; if he does not pay the fee, the city destroys the newsrack.[7] We must concur in plaintiff's claim that the procedure established by the ordinance violates both procedural due process and the First Amendment.

### (a) Procedural due process.

 "We start with the basic proposition that in every case involving a deprivation of property within the purview of the due process clause, the Constitution requires some form of notice and a hearing." (*Beaudreau* v. *Superior Court* (1975) 14 Cal.3d 448, 458 [121 Cal.Rptr. 585, 535 P.2d 713].) As the United States Supreme Court noted more than a quarter century ago: "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property . . . be preceded by notice and opportunity for hearing appropriate to the nature of the case." (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 872-873, 70 S.Ct. 652].) The vitality of this due process principle was reaffirmed by the Supreme Court only last term: "This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 32, 96 S.Ct. 893].)

---

[7]In an affidavit filed by the city in opposition to plaintiff's request for a preliminary injunction, the public official supervising the policing of newsracks stated that, in practice, the city afforded newsrack owners greater protections than required by the ordinance. The official declared that the city generally "tagged" offending racks seven days prior to removal and that on several occasions the city had returned newsracks without payment of a fee when the owner satisfied the city that the removal had been unjustified. These representations, however, fall far short of establishing that the city has adopted a procedure which routinely affords a newsrack owner a hearing on the merits of the seizure of his newsrack.

Furthermore, in judging the constitutionality of the procedure established by the ordinance, we must look to the procedure dictated by the terms of the ordinance, and not to informal practices implemented at the discretion of municipal administrators. As the United States Supreme Court has stated on numerous occasions: " 'It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard.' " (*Coe* v. *Armour Fertilizer Works* (1915) 237 U.S. 413, 424-425 [59 L.Ed. 1027, 1032, 35 S.Ct. 625]; see, e.g., *Central of Georgia Ry.* v. *Wright* (1907) 207 U.S. 127, 138 [52 L.Ed. 134, 141-142, 28 S.Ct. 47].)

As a series of recent procedural due process authorities establish, the Constitution generally requires that an individual be accorded notice and some form of hearing before he is deprived of a protected property or liberty interest. (See, e.g., *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.* (1975) 419 U.S. 601 [42 L.Ed.2d 751, 95 S.Ct. 719]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 215 [124 Cal.Rptr. 14, 539 P.2d 774].) ▮▮ The decisions have also recognized, however, that in particular circumstances important governmental interests may justify the postponement of notice and hearing until after the initial "taking" has occurred. (See, e.g., *Calero-Toledo* v. *Pearson Yacht Leasing Co.* (1974) 416 U.S. 663, 676-680 [40 L.Ed.2d 452, 464-466, 94 S.Ct. 2080] (seizure of vessel used to smuggle drugs); *North American Storage Co.* v. *Chicago* (1908) 211 U.S. 306 [53 L.Ed. 195, 29 S.Ct. 101] (seizure of contaminated food); *Ewing* v. *Mytinger & Casselberry* (1950) 339 U.S. 594 [94 L.Ed. 1088, 70 S.Ct. 870] (seizure of misbranded drugs).) Even when such special considerations pertain, however, the cases have stressed that an opportunity to be heard may only be postponed, not entirely eliminated.

▮▮▮ In the instant case, defendant city cannot realistically contend that its seizure, retention and, on occasion, ultimate destruction of newsracks pursuant to the challenged ordinance does not constitute a "taking" of a protected property interest within the meaning of the controlling constitutional authorities. Although the record does not indicate the market value of a newsrack, recent decisions make clear that due process protections apply to takings of all non-"de minimis" property interests (see, e.g., *North Georgia Finishing, Inc.* v. *Di-Chem, Inc., supra,* 419 U.S. 601, 608 [42 L.Ed.2d 751, 758]; *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 552 [96 Cal.Rptr. 709, 488 P.2d 13]); a newsrack clearly falls within this category. Similarly, recent authorities teach that the allegedly temporary nature of a taking does not necessarily obviate the need for at least some due process protections (see, e.g., *Connelly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 811-812 [132 Cal.Rptr. 477, 553 P.2d 637]; *Beaudreau* v. *Superior Court, supra,* 14 Cal.3d 448, 455); in any event, the taking sanctioned here is not merely temporary, for the ordinance authorizes the actual destruction of a confiscated newsrack if an owner refuses permanently to part with a fee to cover the city's average expenditure in removing a newsrack.[8] Consequently, there can be no doubt of the necessity of testing the validity of the ordinance's seizure procedure against the strictures of due process.

[8] At the time of the preliminary injunction hearing, the city charged newsrack owners a fee of $25 for each newsrack that had been removed from the city's streets.

Under the principles reviewed above, the challenged ordinance clearly fails that constitutional test. Although the ordinance authorizes a taking of a newsrack owner's property, it does not accord the owner the most basic safeguard demanded by due process—an opportunity to be heard on the merits of the taking, either before or after the taking. In the face of this fundamental constitutional defect, section 5 of the ordinance cannot stand.

In an attempt to overcome this obvious deficiency, defendant city contends that since the newsrack owner, after receiving notice that his property has been seized, retains the option of instituting his own action against the city for the return of the rack, the owner in effect does have some opportunity to be heard on the merits of the taking. Not one of the scores of recent procedural due process decisions, however, suggests that the availability of a collateral judicial remedy can sustain a seizure procedure which provides absolutely no hearing whatsoever, either before or after the taking. (See, e.g., *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011].) Acceptance of the city's position would in effect read out almost all of the protections afforded by contemporary procedural due process doctrine, and would place on the party whose property has been taken the additional financial burden of instituting an action for the property's return. Accordingly, we conclude that subdivision (5) of the ordinance is unconstitutional insofar as it provides for the seizure, retention and destruction of newsracks without affording the owner any hearing on the merits of the seizure.

### b. First Amendment "due process."

Moreover, the challenged removal provision is additionally defective because the seizure of newsracks implicates not only the owner's property rights but also the public's First Amendment rights. As we shall explain, although the First Amendment does not immunize newsracks from immediate, pre-notice seizure in all circumstances, the Constitution does require that any such summary seizure procedure be narrowly drafted so as to minimize interference with First Amendment rights. The present provision does not satisfy this constitutional imperative.

As we have seen, subdivision (5) authorizes any public officer, on his own volition, to remove from a public sidewalk any newsrack that he believes is in violation of any one of the numerous size,

weight, appearance or location regulations contained in the ordinance. The removal of a newsrack pursuant to this provision will generally result, of course, in the immediate suppression of any newspapers or other periodicals which are contained within the rack at the time of removal. Although a newsrack owner will subsequently receive notice of the seizure and will be permitted to recover his rack upon payment of a fee, such recovery in the case of a daily newspaper will invariably come too late to avoid the total suppression of the newsworthy contents of the seized papers.

Moreover, while in some cases the seizure of a single newsrack will constitute only a minor inconvenience to the public if the newspaper or periodical contained in the rack is available at a nearby store or newsstand, stores and newsstands do not carry all publications nor are such establishments open at all hours. (See fn. 3, *ante.*) Thus, the seizure of a newsrack can have a significant, deleterious effect on the dissemination of protected expression.

The city defends the challenged seizure procedure as a reasonable means of enforcing its time, place, and manner regulations on newsracks.[9] But, as a series of cases of both the United States Supreme Court and this court teach, "under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases [in enforcing valid regulations] . . . without regard to the possible consequences for constitutionally protected speech." (*Marcus* v. *Search Warrant* (1961) 367 U.S. 717, 731 [6 L.Ed.2d 1127, 1136, 81 S.Ct. 1708]; see, e.g., *Speiser* v. *Randall* (1958) 357 U.S. 513, 520 [2 L.Ed.2d 1460, 1469, 78 S.Ct. 1332]; *Freedman* v. *Maryland* (1965) 380 U.S. 51, 57-58 [13 L.Ed.2d 649, 653-654, 85 S.Ct. 734]; *Carroll* v. *Princess Anne* (1968) 393 U.S. 175, 180-185 [21 L.Ed.2d 325, 330-333, 89 S.Ct. 347]; *Flack* v. *Municipal Court* (1967) 66 Cal.2d 981, 989-993 [59 Cal.Rptr. 872, 429 P.2d 192]. See generally Monaghan, *First Amendment "Due Process"* (1970) 83 Harv.L.Rev. 518.)

Thus, for example, in *Flack* v. *Municipal Court, supra,* 66 Cal.2d 981, 990-991, we held that "[w]hile it is settled that in the ordinary case a

---

[9]The city does not contend that the removal of newsracks can be justified as a seizure of evidence for use in criminal prosecutions. Although a violation of the newsrack ordinance constitutes a misdemeanor (Los Angeles Mun. Code, § 11.00, subd. (m)), subdivision (5), specifically provides that a seized newsrack is to be destroyed if not claimed within 45 days, and thus the ordinance clearly does not contemplate the use of seized newsracks in connection with criminal prosecutions.

search incident to an arrest is not 'unreasonable' if the arrest itself is lawful [citations], the First Amendment compels more restrictive rules in cases in which the arrest and search relate to alleged obscenity . . . . [W]ith the exception of a situation involving a legitimate emergency, even if the search is contemporaneous with an arrest, a search warrant must be secured prior to any search for or seizure of material alleged to be obscene." (Fns. omitted.) Similarly, in *Carroll* v. *Princess Anne, supra,* 393 U.S. 175, 180 [21 L.Ed.2d 325, 330-331], the United States Supreme Court stressed the need for especially sensitive procedures in the First Amendment field: "There is a place in our jurisprudence for *ex parte* issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate." (See also *United Farm Workers of America* v. *Superior Court* (1975) 14 Cal.3d 902 [122 Cal.Rptr. 877, 537 P.2d 1237].)

The city argues that the ordinance's seizure provision does take First Amendment concerns into account, since it explicitly precludes the removal of any newsrack on the basis of the content of the material within the rack. (See fn. 5, *ante.*) Emphasizing that most of the ordinance's regulations are intended to prevent interference with pedestrian or vehicular traffic, the city maintains that the public interest in the immediate elimination of any such hazard justifies whatever incidental harm to First Amendment values results from the summary seizure of offending newsracks. In this regard, the city analogizes the seizure of newsracks under subdivision (f) (5) to the summary seizure of illegally parked or abandoned automobiles pursuant to Vehicle Code section 22650 et seq.

Although we cannot agree that the removal of newsracks from the public sidewalks can be equated with the removal of vehicles from the public streets—the removal of illegally parked cars does not, after all, result in the suppression of protected expression—we do believe that a comparison of the seizure provisions of the Los Angeles newsrack ordinance and the Vehicle Code provisions relied upon by defendant is instructive. Unlike the challenged newsrack ordinance, the Vehicle Code sections do not broadly sanction the summary removal of a vehicle for *any* parking violation whatsoever, but rather generally authorize seizure

only when an illegally parked vehicle actually "creates a hazard" or "constitutes an obstruction" to traffic. (See Veh. Code, § 22651, subds. (a) and (b).) Indeed, in several instances, the Vehicle Code sections specifically provide that even when a vehicle does constitute such a hazard, removal is authorized only when "it is impractical to move such vehicle . . . to another point on the highway." (See Veh. Code, § 22651, subds. (d) and (e).)

In contrast, subdivision (5) does not limit its removal sanction to violations which actually create hazards for pedestrians or motor vehicles or which otherwise interfere with the safe use of public streets or sidewalks. Instead, under the terms of the ordinance, a newsrack may be summarily removed—and its contents consequently suppressed—if the rack simply weighs a few pounds too much (§ 42.00, subd. (f)(3)(E)) or if a public officer believes that the rack is not "clean" or "neat." (§ 42.00, subd. (f)(3)(H).) Moreover, the ordinance permits a public officer immediately to remove any rack which is not properly placed within the strict limits stipulated in the ordinance, even when the violation could be cured simply by moving the rack a few inches or a few feet.[10]

In light of the controversial nature of many of the newspapers and periodicals distributed through newsracks, and the fact that newsracks will often, in the course of normal use by the public, be jostled or moved into technical noncompliance with the ordinance's precise placement regulations, subdivision (5)'s authorization of summary removal for *any* violation—no matter how minor—creates a very real risk that individual enforcement officers may consider a variety of extraneous factors, including the contents of a newsrack, in determining whether or not a particular rack should be removed from a public sidewalk. Past cases have pointed to the potential for such arbitrary or discriminatory suppression of protected expression at the hands of individual police officers as a primary justification for requiring that enforcement procedures in the First Amendment area be structured so as to minimize the danger of such unilateral censorship. (See, e.g., *Flack* v. *Municipal Court, supra,* 66 Cal.2d 981, 986-992; *Roaden* v. *Kentucky* (1973) 413 U.S. 496, 501-506 [37 L.Ed.2d 757, 762-766, 93 S.Ct. 2796]; *Stanford* v. *Texas*

---

[10]Although subdivision (6) of the ordinance provides an officer with the option of either removing an offending newsrack or of restoring the rack to a "legal condition," the present ordinance, unlike the Vehicle Code sections noted above, does not direct enforcement officers to refrain from seizing a newsrack whenever an alternative solution is "practical."

(1965) 379 U.S. 476, 485 [13 L.Ed.2d 431, 437, 85 S.Ct. 506]; *Marcus* v. *Search Warrant, supra,* 367 U.S. 717, 731-733 [6 L.Ed.2d 1127, 1135-1137].) Because subdivision (5) makes no attempt to limit an individual officer's summary seizure authority to situations in which immediate removal is mandated by public need (see *Roaden* v. *Kentucky, supra,* 413 U.S. 496, 505 [37 L.Ed.2d 757, 765]; *Flack* v. *Municipal Court, supra,* 66 Cal.2d 981, 991), we conclude that the subdivision is incompatible with governing First Amendment principles.

Our holding in this regard, however, should not be misunderstood. We have no doubt that the City of Los Angeles is constitutionally empowered to provide for the immediate seizure, without prior notice or hearing, of any newsrack that poses a danger to pedestrians or vehicles. Moreover, even when no such danger is present, the city may authorize the seizure of an offending newsrack so long as the owner has been notified of the imminent seizure and has been given a reasonable opportunity either to cure the violation or to contest the seizure in an informal administrative forum. Finally, the city may, of course, impose alternative, constitutionally less intrusive sanctions, such as fines, to encourage owners to police their own newsracks to insure that the racks remain in compliance with the city's reasonable time, place and manner regulations. Obviously, however, it is for the city, and not this court, to decide what enforcement procedure, if any, should be established to replace the constitutionally deficient procedure contained in the present ordinance.

### 3. Conclusion

In recent years, sidewalk newsracks have become, in turn, the subject of public concern, municipal regulation, and judicial controversy. In the present case, plaintiffs have mounted a broad-based attack on newsrack regulations enacted by the City of Los Angeles in 1972. As we have explained, we have determined that, as construed herein, the substantive time, place and manner regulations of the challenged ordinance are neither constitutionally vague nor overbroad. We have also concluded, however, that the section of the ordinance authorizing the summary removal, retention and destruction of offending newsracks is invalid on its face, both as a denial of procedural due process and as insufficiently sensitive to First Amendment rights.

The judgment of the superior court is reversed and the cause remanded for further proceedings consistent with the views expressed herein. Each party shall bear its own costs on appeal.

Mosk, J., Clark, J., Richardson, J., Sullivan, J.,* Wright, J.,† and Kaus, J.,‡ concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

‡Assigned by the Chairman of the Judicial Council.