**TAXPAYERS FOR VINCENT, an unincorporated political association, and Candidates' Outdoor Graphics Service (COGS), a California corporation, Plaintiffs-Appellants,**

v.

**MEMBERS OF the CITY COUNCIL OF the CITY OF LOS ANGELES; the City of Los Angeles; and Edward D. Longley as Director of the Bureau of Street Maintenance for the City of Los Angeles, Defendants-Appellees.**

No. 80–5686.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1982.

Decided July 30, 1982.

Rehearing Denied Sept. 10, 1982.

Wayne S. Canterbury, San Francisco, Cal., for plaintiffs-appellants.

Anthony S. Alperin, Deputy City Atty., Los Angeles, Cal., for defendants-appellees.

Before NELSON and REINHARDT, Circuit Judges, and EAST,* District Judge.

NELSON, Circuit Judge:

Appellants, Taxpayers for Vincent ("Taxpayers") and Candidates' Outdoor Graphics Service ("COGS"), contest the constitutionality of Los Angeles Municipal Code § 28.-04, which prohibits the posting of signs on numerous types of public property. They brought suit against the City of Los Angeles and its representatives ("City") for declaratory and injunctive relief, claiming that the ordinance is unconstitutional on its face under the first and fourteenth amendments. The district court denied interim relief. Taxpayers and COGS then moved for partial summary judgment, reserving the issues of damages and attorney's fees. The City filed a cross-motion for summary judgment, which, after briefing and oral argument, the district court granted. Taxpayers and COGS filed a timely appeal.

In reviewing a grant of summary judgment we " 'need decide only whether any genuine issue of material fact remains

---

* The Honorable William G. East, Senior U. S. District Judge for the District of Oregon, sitting by designation.

for trial and whether the substantive law was correctly applied.'" *Gaines v. Haughton*, 645 F.2d 761, 769 (9th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982) (quoting *Inland Cities Express, Inc. v. Diamond National Corp.*, 524 F.2d 753, 754 (9th Cir. 1975)). We freely review questions of law. 645 F.2d at 770.

■ Section 28.04 provides, in part, as follows:

(a) No person shall paint, mark or write on, or post or otherwise affix, any hand-bill or sign to or upon any sidewalk, crosswalk, curb, curbstone, street lamp post, hydrant, tree, shrub, tree stake or guard, railroad trestle, electric light or power or telephone or telegraph or trolley wire pole, or wire appurtenance thereof or upon any fixture of the fire alarm or police telegraph system or upon any lighting system, public bridge, drinking fountain, life buoy, life preserver, life boat or other life saving equipment, street sign or traffic sign.

The issue presented is whether the ordinance, as presently drafted, is facially unconstitutional under the first and fourteenth amendments to the United States Constitution.[1]

In a recent case, *Rosen v. Port of Oakland*, 641 F.2d 1243 (9th Cir. 1981), we suggested certain general principles that must be applied in analyzing statutes or ordinances which regulate first amendment rights:

> *First*, the law is presumptively unconstitutional and the state bears the burden of justification. . . . *Second*, the law must bear a "substantial relation" to a "weighty" governmental interest. . . . The law cannot be justified merely by the showing of some legitimate governmental interest. . . . *Third*, the law must be the least drastic means of protecting the governmental interest involved; its restrictions may be "no greater than necessary or essential to the protection of the governmental interest."

*Id.* at 1246 (citations omitted).[2]

Applying these general principles to the specific requirements of the ordinance, we conclude that the ordinance is unconstitutional on its face. The decision of the district court must be reversed.

---

**1.** Although the City has not raised the issue, a reading of the record indicates that the case might be moot. Because mootness is an element of justiciability and, hence, raises a question as to our jurisdiction, we consider the matter sua sponte. *Csibi v. Fustos*, 670 F.2d 134, 136 & n.3 (9th Cir. 1982); 6A J. Moore, *Moore's Federal Practice* ¶ 57.13 & n.] (2d ed. 1982 & Supp. 1981–82); *see also McLaughlin v. Hoffman*, 547 F.2d 918, 919 n.2 (5th Cir. 1977) ("While neither party raises this issue, mootness is a jurisdictional question under Article III, which may be raised by the court.").

The record is somewhat sketchy regarding a showing that appellants have a continuing interest in the posting of campaign signs in regard to future elections. There is no indication that Vincent will again seek public office. COGS, however, is in the business of printing and posting campaign signs, has been employed by candidates in previous Los Angeles elections, and might reasonably be expected to be employed in future election campaigns in Los Angeles. Finally, there is no indication that the City intends to terminate its current level of enforcement of the ordinance. It therefore appears that an immediate and real controversy exists. *See Baldwin v. Redwood City*, 540 F.2d 1360, 1365 (9th Cir. 1976), *cert. de-*

*nied*, 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). Moreover,

> given the frequency and brevity of local political campaigns and the length of time required to complete judicial proceedings, the issue is one "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 [, 316] (1911).

*Baldwin*, 540 F.2d at 1365. Because we conclude that challenges to this ordinance are "capable of repetition, yet evading review," we decide that this appeal is not moot.

We also note that Taxpayers and COGS argue that the ordinance constitutes an equal protection violation because it discriminates in favor of some classes of persons. Because we hold that the challenged ordinance is facially violative of appellants' first amendment speech interests, we do not consider the equal protection claim.

**2.** A fourth general principle not applicable to the facts of this case is that the law must be drawn with "narrow specificity." 641 F.2d at 1246; *see also Hynes v. Mayor of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

## I

### THE PRESUMPTION OF UNCONSTITUTIONALITY

■ Taxpayers and COGS want to post temporary election campaign posters. The first amendment free speech guarantee "has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35, 41 (1971). Further, this circuit has recognized that

> means of political communication are not entirely fungible; political posters have unique advantages. Their use may be localized to a degree that radio and newspaper advertising may not. With exception of handbills, they are the least expensive means by which a candidate may achieve name recognition among voters in a local election.

*Baldwin v. Redwood City*, 540 F.2d 1360, 1368 (9th Cir. 1976), *cert. denied*, 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). Thus, it is clear that significant first amendment interests are involved, the presumption of unconstitutionality applies, and the state bears the burden of justification.

## II

### SUBSTANTIAL RELATION TO A WEIGHTY GOVERNMENTAL INTEREST

The City argues that its ordinance prohibiting the posting of signs, hand-bills and the like on public objects is justified by the following governmental interests: prevention of interference with the normal uses of public objects, prevention of visual clutter, and prevention of traffic hazards. As these are all legitimate governmental concerns, we will consider the relative significance of these interests and the importance of the challenged ordinance to their realization. *Baldwin*, 540 F.2d at 1366–67.

The City's first asserted justification is that the posting of signs and hand-bills on public objects must be prohibited to prevent interference with the normal and primary uses of those objects, many of which uses are intimately connected with public safety. The Supreme Court has said:

> The nature of a place, "the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable." ... *The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time.* Our cases make clear that in assessing the reasonableness of a regulation, we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the State's legitimate interest.

*Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222, 232 (1972) (quoting Wright, *The Constitution on the Campus*, 22 Vand.L.Rev. 1027, 1042 (1969)) (emphasis added).

■ Although a silent vigil would not unduly interfere with the use of the reading room of a public library and is thus permitted there, *Brown v. Louisiana*, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966), a person wishing to make a speech constitutionally could be prohibited from making his speech in the reading room where it would disturb those seeking the quiet of the library. Similarly, a municipality can prohibit noisy demonstrations that disrupt the normal activities of a school. *Grayned*, 408 U.S. at 117–19, 92 S.Ct. at 2304–05, 33 L.Ed.2d at 233–34. The *Grayned* Court clearly recognized that one manner of expression might be protected in a place, while another manner of expression might not be protected in the same place. 408 U.S. at 116–19, 92 S.Ct. at 2303–05, 33 L.Ed.2d at 232–34.[3]

---

**3.** The parties expend substantial effort in arguing whether the areas in which appellants wish to post election signs are part of a traditional public forum, in which first amendment activity is rigorously protected, or, if not a traditional public forum, whether the City, by allowing some exceptions to the reach of the ordinance, has "opened" the forum to appellants.

In arguing over whether the areas are a traditional public forum, the parties rely on the influential dictum of Justice Roberts in *Hague*

The City argues that the ordinance is necessary to prevent posters from obscuring City signs and from obscuring or obstructing access to fire hydrants, and to ameliorate dangers to City workers who must on occasion climb utility poles.[4] These are significant and weighty interests which,

if impossible to protect by less restrictive alternatives (see part III infra), may be sufficient to rebut the presumption of unconstitutionality.

The City's second justification for the ordinance is that it prevents visual clutter.[5] While it is clear that promoting an

v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939):

> Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thought between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.

Id. at 515–16, 59 S.Ct. at 964, 83 L.Ed. at 1436–37 (Roberts, J.) (plurality opinion) (dictum).

In sustaining the constitutionality of a virtually identical San Mateo, California, ordinance that had been attacked as violative of the first amendment, the California Court of Appeals appeared to assume that public objects such as light standards and utility poles were located within the traditional public forum. Sussli v. City of San Mateo, 120 Cal.App.3d 1, 8, 173 Cal.Rptr. 781, 785, cert. denied, 454 U.S. 1085, 102 S.Ct. 643, 70 L.Ed.2d 621 (1981); id. at 13, 173 Cal.Rptr. at 788 (Racanelli, J., dissenting) (critical language of ordinance "purports to totally circumscribe the exercise of a fundamental individual liberty within traditional public forums") (emphasis added).

The Redwood City ordinance struck down in Baldwin severely restricted the display of political signs on private property in residential areas of the city. 540 F.2d at 1373. The Baldwin court noted that political "[p]osters and signs are erected adjacent to 'traditional first amendment forums, such as public sidewalks, and other thoroughfares," Aiona v. Pai, 516 F.2d 892, 893 (9th Cir. 1975) where 'expressive activity may be restricted only for weighty reasons.' Grayned v. City of Rockford, 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972)." 540 F.2d at 1366 (footnote omitted). Thus, the Baldwin court, as well, appeared to assume that these areas adjacent to traditional public forums fall within the protected area.

The California Supreme Court has, in dicta, said much the same thing: "Thus, past cases

have found that demonstrations and parades . . . and even the posting of signs on public utility poles (Dulaney v. Municipal Court (1974) 11 Cal.3d 77, 112 Cal.Rptr. 777, 520 P.2d 1) fall 'within the protective umbrella of the First Amendment.'" Kash Enterprises, Inc. v. City of Los Angeles, 19 Cal.3d 294, 301–02, 562 P.2d 1302, 1306, 138 Cal.Rptr. 53, 57 (1977). Dulaney, however, expressly reserved "the question under what circumstances public property must be made available, if at all, as a forum for First Amendment activities." 11 Cal.3d at 83 n.6, 520 P.2d at 5 n.6, 112 Cal.Rptr. at 781 n.6 (emphasis in original).

Rather than merely labelling this area as within the traditional public forum, we think that something more needs to be said. In this regard, we find the framework of Grayned to be especially appropriate. In applying this framework, we do not mean to question the important core of Justice Robert's dictum in Hague v. C. I. O., supra. It is clear to us that whether a place has historically been used for the exercise of first amendment rights, as have these public objects, tells us something about how inconsistent first amendment use is with the primary use of that place. See Stone, Fora Americana: Speech in Public Places, 1974 Sup. Ct.Rev. 233, 252. This traditional use causes us to doubt whether this manner of expression is basically incompatible with the normal uses of some of the public objects at issue here.

4. We agree with the district court's "finding" that "[t]he presence of foreign materials and imperfections in utility poles are dangerous to work[ers] scaling such poles, and if poles are covered by signs and handbills, such objects and imperfections would remain unseen hazards to the life and safety of such work[ers] and could cause repairs to be delayed."

5. As principal support for this justification, appellees argue that the district court found as a fact that permitting the posting of temporary election signs on crosswires of public utility poles "would encourage greatly increased posting" in other places, thus entirely frustrating the purposes of the prohibition. We begin our consideration of this issue by noting that this case is before us as the result of a summary judgment. Thus, although the district court's "findings" are helpful in illuminating what the district court may have thought to be uncontested material facts, they are not findings in

aesthetic environment by reducing visual clutter is a substantial governmental interest, it is less clear that the City's ordinance is significantly related to that interest. As Justice Brennan said in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981):

> It is no doubt true that the appearance of certain areas of the city would be enhanced by the elimination of billboards, but "it is not immediately apparent as a matter of experience" that their elimination in all other areas as well would have more than a negligible impact on aesthetics.

*Id.* at 530–31, 101 S.Ct. at 2904, 69 L.Ed.2d at 829 (Brennan, J., concurring).

Before deferring to the City's judgment, we must be convinced that the City is "seriously and comprehensively addressing aesthetic concerns with respect to its environment." *Id.* *See John Donnelly & Sons v. Campbell*, 639 F.2d 6, 23 (1st Cir. 1980) (Pettine, J., concurring), *aff'd*, 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). Here the City has not offered to demonstrate that it is engaged in "a comprehensive coordinated effort in its commercial and industrial areas to address other obvious contributors to an unattractive environment. In this sense, the ordinance is underinclusive." 453 U.S. at 531, 101 S.Ct. at 2904, 69 L.Ed.2d at 829. Thus, the City has failed to make a sufficient showing, even for purposes of summary judgment, that its asserted interest in aesthetics and preventing visual clutter is substantial.

■ The final justification asserted by the City for the ordinance is that it prevents traffic hazards. Although this, too, may be a substantial interest, and although some portion of the ordinance may properly be directed at this concern, viewing the ordinance as a whole, we find that this particular justification is insufficient as a matter of law. The City has not offered to prove facts that raise any genuine issue regarding traffic safety hazards with respect to the posting of signs on many of the objects covered by the ordinance. *See id.* at 528 & n.7, 101 S.Ct. at 2903–04 & n.7, 69 L.Ed.2d at 828 & n.7. To the contrary, it is readily apparent that no substantial traffic hazard problem would result from permitting the posting of certain materials on much of the property subject to the ordinance.

In summary, the only interest of the City that might be substantial enough to rebut the presumption of unconstitutionality of the ordinance is the interest in preventing interference with the normal and primary uses of public objects, many of which uses are connected with public safety. We now consider whether the ordinance is the least drastic means of protecting that interest.

III

## THE LEAST DRASTIC MEANS OF PROTECTING GOVERNMENTAL INTERESTS

■ Taxpayers and COGS seek to attach their signs only to the cross-wires of utility poles, or other places where they would not interfere with the normal functioning of the public objects involved. They do not, for example, seek the right to post signs on fire hydrants, trees, or shrubs, or to obscure traffic or street signs. Taxpayers and COGS concede that the posting of political signs may be subject to reasonable regulation as to time, place, and manner of use, but argue that there is nothing inherent in the use of political signs which would justify an *absolute ban* against their use in public places. *See Grayned*, 408 U.S. at 115–16, 92 S.Ct. at 2302–03, 33 L.Ed.2d at 231–32; *Hague v. C. I. O.*, 307 U.S. 496, 515–16, 59 S.Ct. 954, 964, 83 L.Ed. 1423, 1436–37 (1939). We agree that there are less restrictive alternatives to banning all posting of political signs.

Instead of a general ban, the City might regulate the size, design, and construction

the strict sense, nor are they entitled to any special deference. *Gaines v. Haughton*, 645 F.2d at 768 n.13; *Heiniger v. City of Phoenix*, 625 F.2d 842, 843–44 (9th Cir. 1980); *see* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.02[11] (2d ed. 1976); *see also Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 982–83 (9th Cir. 1980) (Wallace, J., concurring).

of the posters, *Baldwin*, 540 F.2d at 1370, institute clean up or removal requirements, *id.*, or provide more stringent regulations for the areas of the City more in need of protection, *see Metromedia*, 453 U.S. at 530–31, 101 S.Ct. at 2904–05, 69 L.Ed.2d at 829–30 (Brennan, J., concurring). Moreover, the City might specifically prohibit the erection of signs that obscure hydrants, traffic signs, and signals, or that block motorists' lines of sight. We also think it clear that the City might prohibit the posting of signs on trees or shrubs. Thus, some specific prohibitions might be constitutional, but we cannot conclude that all those set forth in the present ordinance are.

While we cannot be certain that these alternatives we have suggested, or others that may be devised by the City, will be successful, we conclude that in light of the first amendment interests involved, some alternatives should be tried. *See United States Postal Service v. Council of Greenburg Civic Associations*, 453 U.S. 114, 154, 101 S.Ct. 2676, 2698, 69 L.Ed.2d 517, 546 (1981) (Stevens, J., dissenting). *See generally* Ratner, *The Function of the Due Process Clause*, 116 U.Pa.L.Rev. 1048, 1110–11 (1968) (discussion of judicial use of less intrusive alternatives).[6]

## CONCLUSION

We conclude that the City has, at best, put forth only one weighty governmental interest to which the ordinance is substantially related and has failed to convince this court that there do not exist less drastic means of protecting that interest.[7] It has failed to rebut the presumption of unconstitutionality of the ordinance.

We, therefore, reverse the district court's grant of summary judgment in favor of the City. We conclude as a matter of law that Taxpayers and COGS are entitled to a grant of partial summary judgment and remand this case to the district court for entry of partial summary judgment in accordance with this opinion. The district court may then proceed to decide the issues of damages and attorney's fees.

REVERSED AND REMANDED.

---

**6.** We feel that the testing of a probably effective alternative is especially appropriate where, as here, the City's present ordinance is demonstrably ineffective: the record shows that between January 1, 1980, and May 24, 1980, Los Angeles street inspection personnel removed 51,662 illegally posted signs. At least one Justice saw a similar problem in *Council of Greenburg Civic Associations*:

> Finally, we should not ignore the fact that nobody has ever been convicted of violating this middle-aged nationwide statute. It must have been violated literally millions of times. Apparently the threat of enforcement has enabled the Government to collect some postage from time to time or to cause a few violators to discontinue their unlawful practices, but I have the impression that the general public is at best only dimly aware of the

law and that numerous otherwise law-abiding citizens regularly violate it with impunity. This impression supports the conclusion that the statute is indeed much broader than is necessary to serve its limited purpose.

453 U.S. at 155, 101 S.Ct. at 2698, 69 L.Ed.2d at 546 (Stevens, J., dissenting); *see* Ratner, *supra*, at 1079, 1092.

**7.** If the City chooses to enact an alternative ordinance, its subsequent experience will serve as a test of the effectiveness of the alternative. The City may, of course, at some later date reenact the ordinance that we invalidate today, if its experience shows that the alternative is ineffective in satisfying its interests. We could then reconsider the matter in light of that experience. Ratner, *supra*, at 1110–11.